# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-KA-00364-SCT

*YANCY STEVENSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/05/2020 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| TRIAL COURT ATTORNEYS: | JAMIE MARIE BANKS |
| | ALISON LESLIE FLINT |
| | WILBERT LEVON JOHNSON |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: META S. COPELAND |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/01/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     Yancy Stevenson was convicted of two counts of first-degree murder.  On appeal, Stevenson contends the circuit court should have declared a mistrial sua sponte after one of the State's witnesses testified that Stevenson had said that "he thought somebody was gonna snitch on him and he hate to kill somebody else" and that "he ain't killed nobody in a long time."  Stevenson's counsel did not object to this testimony, thus Stevenson also contends

that he received ineffective assistance of counsel. But Stevenson is wrong—even if his counsel had objected, the threat was admissible as evidence of Stevenson's consciousness of guilt, and its probative value was not substantially outweighed by its prejudicial impact. We likewise find no merit to Stevenson's contention that this failure to object constituted ineffective assistance of counsel. We deny relief without prejudice to a future postconviction-relief claim on Stevenson's other claims of ineffective assistance of counsel. We affirm Stevenson's conviction and sentence.

**FACTS**

¶2. On April 16, 2016, Yancy Stevenson asked his friend Cord Tyler for a ride from Lambert, Mississippi, to Marks, Mississippi, to retrieve something he had left in Dennis Wesley's car. Barry Walker, a passenger, observed that Stevenson was "mad" and had a gun with him in the car. Following a few brief stops, the group arrived at Shakeri McNutt's home after midnight. Wesley was not there, so Stevenson used McNutt's phone to text Wesley, sending him, "[n]igga, ima kill you and that bitch, bring my shit." Stevenson then used McNutt's phone to call Latoya Market's roommate to say, "if [he] see[s] either [Dennis Wesley or Latoya Market], tell them that he gonna kill them . . . because they stole something from him." Stevenson was "belligerent" and seemed "highly upset."

¶3. Stevenson then returned to the car, and Cord Tyler drove the group to Dennis Wesley's home. During the car ride Stevenson was "mad" and said that "he left something in [Dennis Wesley's] car and he was trying to go get it." Once the group pulled into Dennis Wesley's driveway, Stevenson got out of the car and went to the front door. Both Latoya and

2

Dennis came to the door, and the three began arguing.

¶4.    Dennis and Stevenson then walked to Dennis's car parked in the driveway and began to search it.  Latoya came out of the house in an attempt to defuse the situation but, unsuccessful, she returned inside.  Stevenson and Dennis were walking back into the house when Stevenson struck or shot the screen-door window, breaking it.  It was then that the other passengers of Cord's car got out of the vehicle and attempted to calm the situation down.

¶5.    After approximately thirty minutes, after Dennis had told Stevenson he did not know where Stevenson's "package" was, they seemingly "talked it out" and "shook hands."  The passengers who had ridden with Stevenson then got back in Cord's car, but Stevenson remained, speaking with Latoya and Dennis.  Dennis began to run away, and Stevenson fired his gun, hitting Dennis in the back.  Stevenson then turned his attention to Latoya, with Latoya begging for her life from the backseat of Dennis's car.  Cord later testified that he heard Latoya say something along the lines of "[d]on't do this in front of my kids."  Stevenson ultimately shot Latoya.  Autopsies later confirmed that Dennis died from a gunshot wound to the chest and that Latoya died from a gunshot wound to the head.

¶6.    Stevenson then got back into Cord's car and "was sad," telling the group "stuff like, he didn't wanna do that, he shouldn't have did it, things like that."  Cord later testified that Stevenson said, "I got a feeling one of y'all niggas gonna snitch on me and I don't wanna kill nobody else."  According to Cord, Stevenson also told the group that "he hate to kill somebody else . . . he ain't killed nobody in a long time."  The group eventually drove back

3

to Lambert, and Cord dropped off all passengers.

¶7.     At Stevenson's trial, the State called thirteen witnesses, including the three other passengers in Cord's car on the night of the shootings and Latoya's eleven-year-old son, who had witnessed Stevenson shoot Latoya from the house. Stevenson called no witnesses. Instead, Stevenson's counsel attempted to discredit the State's witnesses as biased or lacking recollection of the events. The defense proposed that because another witness was a cousin and friend of the deceased, she was biased against Stevenson. The defense further emphasized that the three passengers had been drinking that night and that Latoya's son was only eleven when he witnessed Stevenson shoot his mother. Stevenson's counsel thus suggested that each of these eyewitnesses' accounts were not reliable recollections of the night in question.

¶8.     The State presented evidence of Stevenson's threats to kill Dennis and Latoya, and Stevenson's DNA was found on the shattered storm door and at the crime scene. Latoya's son also identified Stevenson in a photographic lineup as the man who had shot his mother and Dennis. The jury found Stevenson guilty of two counts of first-degree murder. Stevenson appealed from his conviction and sentence on March 30, 2020.

## ISSUES

¶9.      Stevenson raises two issues on appeal:

(1)     Whether the trial court erred by failing to declare a mistrial sua sponte after a witness testified about Stevenson's prior bad acts, namely, his having killed before.

(2)     Whether Stevenson did not receive effective assistance of counsel.

4

## DISCUSSION

**1.  Whether the trial court erred by failing to declare a mistrial sua sponte after a witness testified about Stevenson's prior bad acts, namely, his having killed before.**

¶10.  Stevenson contends that the trial court erred by failing sua sponte to declare a mistrial based on the testimony Cord Tyler, the owner and driver of the car that took Stevenson to and from the house on the evening of the murders.  On direct examination, the State asked Cord how Stevenson appeared after getting back in the car following the shootings.  Cord responded, volunteering the statement at issue here:

> A.  He was crying, saying he hate he did it. Then he said – It got to the point where he said he thought somebody was gonna snitch on him and he hate to kill somebody else, say he ain't killed nobody in a long time, just all type of different things.
>
> Q.  So, physically, did he appear as though anything was wrong with him?
>
> A.  No, ma'am.
>
> Q.  Okay.

¶11.  Stevenson's counsel did not object to this statement, nor did his counsel make a motion for a mistrial or a curative instruction.  While Stevenson argues that his counsel rendered ineffective assistance by not objecting at that time, Stevenson contends here that when his counsel failed to object and move for a mistrial, "a fair trial was doomed and the prejudice was incisive and fatal."  "There was no remedy for a statement so toxic," thus "it became incumbent upon the court to act."

¶12.  "When an error impacts a fundamental right of the defendant, 'procedural rules give way to prevent a miscarriage of justice,' requiring this Court to address issues on plain-error

5

review and correct any fundamental violations." ***Cozart v. State***, 226 So. 3d 574, 581 (Miss. 2017) (quoting ***Gray v. State***, 549 So. 2d 1316, 1321 (Miss. 1989)). "Under the plain-error doctrine, [this Court] can recognize obvious error which was not properly raised by the defendant . . . ." ***Garcia v. State***, 300 So. 3d 945, 976 (Miss. 2020) (first alteration in original) (internal quotation marks omitted) (quoting ***Ambrose v. State***, 254 So. 3d 77, 136 (Miss. 2018)). "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." ***Id.*** (internal quotation marks omitted) (quoting ***Ambrose***, 254 So. 3d at 136).

¶13.     "In order to preserve an issue for appeal, counsel must object. The failure to object acts as a waiver." ***Ross v. State***, 275 So. 3d 1090, 1093 (Miss. 2019) (internal quotation marks omitted) (quoting ***Havard v. State***, 928 So. 2d 771, 791 (Miss. 2006)). And "[i]f no contemporaneous objection is made, the error, if any, is waived." ***Ronk v. State***, 172 So. 3d 1112, 1134 (Miss. 2015)  (internal quotation mark omitted) (quoting ***Cole v. State***, 525 So. 2d 365, 369 (Miss. 1987)).

¶14.     "[M]istrials should only be declared *sua sponte*" when manifestly necessary. ***Younger v. State***, 931 So. 2d 1289, 1291 (Miss. 2006). "The trial judge has broad discretion in declaring a mistrial." ***Smith v. State***, 925 So. 2d 825, 833 (Miss. 2006).

¶15.     Stevenson argues that the evidence was "improper," but this contention is incorrect. Mississippi Rule of Evidence 404(b)(1) provides in part that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a

6

particular occasion the person acted in accordance with the character." Evidence of a crime, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2).

¶16.    This Court has held that if evidence exists that a defendant attempted to prevent a witness from testifying, this evidence has "probative value as an incriminating circumstance inconsistent with [the defendant's] innocence; and as tending to show a consciousness of guilt and that his cause lacked honesty and truth." *Mattox v. State*, 137 So. 2d 920, 923 (Miss. 1962) (citing 22 C.J.S. *Criminal Law* § 33).

¶17.    To be admissible, evidence of threats against the witness must be "(1) . . . related to the offense charged and (2) . . . reliable." *United States v. Hayden*, 85 F.3d 153, 159 (4th Cir. 1996). "Evidence of threats to a prosecution witness is admissible as showing consciousness of guilt if a direct connection is established between the defendant and the threat." *United States v. Smith*, 629 F.2d 650, 651-52 (10th Cir. 1980) (citing *United States v. Rios*, 611 F.2d 1335, 1349 (10th Cir. 1979)).

¶18.    Still, under Mississippi Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." But the probative value of Stevenson's statement is not substantially outweighed by unfair prejudice. Stevenson did not identify any specific person by name that he had killed before, and he clearly intended the statement to

7

be a threat to the passengers.

¶19. Under plain-error review, the inclusion of this statement does not rise to the level of "obvious instances of injustice or misapplied law." *Swinney v. State*, 241 So. 3d 599, 605 (Miss. 2018) (internal quotation mark omitted) (quoting *Green v. State*, 183 So. 3d 28, 31 (Miss. 2016)). "Prejudice often is lacking when the weight of the evidence against a defendant is overwhelming." *Id.* at 606 (internal quotation marks omitted) (quoting *Hall v. State*, 201 So. 3d 424, 428 (Miss. 2016)).

¶20. We can find no plain error here—indeed, it appears that the testimony would have been admitted over an objection had one been made because the witness was recounting how Stevenson had threatened him and the other passengers not to snitch. There were multiple witnesses present in the vehicle when Stevenson stated that he thought the passengers would snitch on him and that he would hate to kill someone else. The statement about Stevenson's prior bad acts was not offered to speak to his character, it was made to show Stevenson's consciousness of guilt following the killings. Admissible testimony does not create a manifest necessity to declare a mistrial.

**2. Whether Stevenson received effective assistance of counsel.**

¶21. "Criminal defendants are entitled to effective assistance of counsel." *Ronk v. State*, 267 So. 3d 1239, 1247-48 (Miss. 2019) (citing *Read v. State*, 430 So. 2d 832, 837 (Miss. 1983)). "Whether a defendant has received ineffective assistance of counsel is a question of law reviewed *de novo* under two prongs: '[f]irst, the defendant must show that counsel's performance was deficient . . . [s]econd, the defendant must show that the deficient

8

performance prejudiced the defense.'" ***Taylor v. State***, 167 So. 3d 1143, 1146 (Miss. 2015) (first alteration in original) (quoting ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." ***Strickland***, 466 U.S. at 686.

¶22.     In ***Strickland***, 466 U.S. at 687, the United States Supreme Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

¶23.     "The touchstone for testing a claim of ineffectiveness of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." ***Arrington v. State***, 267 So. 3d 753, 757 (Miss. 2019) (internal quotation marks omitted) (quoting ***Ross v. State***, 954 So. 2d 968, 1005 (Miss. 2007)). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" ***Strickland***, 466 U.S. at 690 (quoting

*Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)).

¶24.    Stevenson first argues that the testimony that he had said it had been a long time since he had killed anyone was "improper" evidence and that his counsel's lack of response constituted ineffective assistance of counsel. We have already held that this testimony would have been admitted even if Stevenson's counsel had objected. Thus, Stevenson cannot meet his burden under the second *Strickland* prong as to this particular claim of ineffective assistance of counsel, and we find it to be without merit.

¶25.    Stevenson further claims that his counsel was ineffective because his counsel opened the door to damaging evidence on cross-examination. Specifically, Stevenson contends that his counsel asked Latoya's son questions relating to what he had heard at the time of his mother's death, which the State used on redirect to elicit the son's testimony that he heard his mother say, "Yancy, please don't kill me, I have kids." This testimony had not been brought out on direct examination. Stevenson contends that his counsel "blindly open[ed] a door . . . invit[ing] the entry of evidence that is so damaging, it has been held to constitute ineffective assistance of counsel."

¶26.    Stevenson also claims that there were other instances of deficient representation that may not reach the level of actual prejudice, such as:

> At the close of the trial, an instruction on firearm enhancement was not objected to. Instead the trial judge noted the firearm enhancement was no [sic] appropriate where the sentence exceeded five (5) years, which the sentences herein did. A box of bullets was discovered in the bLAck [sic] Mustang, which were tied to Appellant by hearsay. The witness had been "told" the ammunition was Stevenson's.

¶27.    "'[I]t is unusual for this [C]ourt to consider a claim of ineffective assistance of

10

counsel when the claim is made on direct appeal,' because 'there is usually insufficient evidence within the record to evaluate the claim.'" ***Shinstock v. State***, 220 So. 3d 967, 971 (Miss. 2017) (second alteration in original) (quoting ***Wilcher v. State***, 863 So. 2d 776, 825 (Miss. 2003)).

¶28.　The ineffective-assistance-of-counsel claim regarding the cross-examination of Latoya's son is not based on facts that are fully apparent from the record. This claim should be left to postconviction relief. As Stevenson's brief points out, it is unclear whether Stevenson's trial counsel failed to investigate what the line of testimony would be (which could arguably be deficient representation) or if something else happened, like the witness changed his testimony. This would require evidence outside the record to determine. The State does concede that the record is not sufficient to resolve this claim on direct appeal. We deny relief on the remaining claims of ineffective assistance of counsel without prejudice to a future postconviction-relief claim.

¶29.　**AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. KING, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶30.　While I concur with the majority opinion, I write separately to express my belief that the better course would be to dismiss all of the ineffective assistance of counsel claims without prejudice to Stevenson's ability to raise them in postconviction relief proceedings. Severing the claims in this manner is simply unnecessary. *See **Wilcher v. State***, 863 So. 2d

11

776, 825 (Miss. 2003) (noting that it is unusual for this Court to consider ineffective assistance of counsel claims on direct appeal).

**KITCHENS, P.J., JOINS THIS OPINION.**