# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00986-SCT

*EDDIE HALL a/k/a EDDIE TERRELL HALL*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2013 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| TRIAL COURT ATTORNEYS: | DANIEL JONES |
| | WENDELL JAMES |
| | FRANK C. JONES |
| | WILLIAM FRANKLIN JORDAN |
| | CATOUCHE BODY |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD W. BOYKIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | DANIEL CHRISTOPHER JONES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/13/2016 |
| MOTION FOR REHEARING FILED: | 04/14/2016 |
| MANDATE ISSUED: | |

**BEFORE DICKINSON AND RANDOLPH, P.JJ., AND KITCHENS, J.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is granted. The previous opinion of this Court is withdrawn, and the following opinions are substituted therefor. Eddie Hall was convicted of murdering Johnny "Tubby" Hubbard in the Black Cat community of Covington County, Mississippi. The jury received eyewitness testimony that when a fight broke out at the end of a horse show, Hall retrieved a gun from his trailer and shot Tubby twice as Tubby attempted to break

up the fight and leave the scene. On appeal, Hall argues that the judge made errors during the jury selection process and that he received ineffective assistance of counsel. We affirm Hall's conviction and life sentence.

**FACTS AND PROCEEDINGS BELOW**

¶2.     While qualifying the jury, the judge asked potential jurors, "have any of you ever been convicted of a crime that is punishable by imprisonment in this state's penitentiary, or any other state's penitentiary, or in the Federal Court system? Please stand." The judge's exchange with one prospective juror went as follows:

> THE COURT:          And what were you convicted of?
>
> PROSPECTIVE JUROR:  Drugs.
>
> THE COURT:          In what State?
>
> PROSPECTIVE JUROR:  Mississippi.
>
> THE COURT:          Is that in State court or federal?
>
> PROSPECTIVE JUROR:  Federal.
>
> THE COURT:          All right. You're discharged. Thank you.

¶3.     As the judge continued to screen potential jurors, the State requested leave to approach the bench, and the following sidebar conversation took place:

> DEFENSE:    I apologize, Your Honor. He was doing this at my suggestion. I have spoken with my client. And my client would like to make an open plea to manslaughter if he may.
>
> STATE:      Judge, it's your court. You tell me. We are ready to go.
>
> THE COURT:  You know, I'm not going to entertain that.

The sidebar conversation concluded and qualification of jurors resumed.

¶4.　　After the jury was selected, testimony commenced. Two eyewitnesses to the fatal shooting were Rufus Hubbard and Michael Hubbard, the victim's uncle and first cousin, respectively.　They related that a horse show was held in the Black Cat community of Covington County on September 16, 2012. Rufus met Hall for the first time the day of the show. Michael had known Hall for six or seven years. At twilight, a fight broke out among a group of fifty to one hundred people after they returned from a trail ride. Hall retrieved a revolver from his trailer and fired it into the air, instructing people to leave immediately. Tubby, who was attempting to help break up the fight, got into his truck and started to drive away. But Hall evidently had taken offense at Tubby, for reasons unclear in the record. After shouting something to the effect of "[t]hat sumbitch hit my old lady," Hall fired a shot into the windshield of Tubby's truck before walking around and firing a second shot at Tubby through the passenger side.[1] The first shot grazed Tubby's cheek. The second shot hit his upper arm. Michael testified that he confronted Hall and asked "what's going on?" Hall replied "you want to get shot too?" Tubby fled the truck and ran into the woods. Hall then shouted something to the effect of "let's go get the sumbitch, he went in the woods." Hall led several others to chase after Tubby. Michael and another individual were able to reach Tubby first and take him to the hospital. Tubby died at the hospital due to blood loss from the gunshot wound in his upper arm. Hall disappeared for two days before turning himself in to the sheriff. The gun was never recovered.

_____

[1] Rufus testified that he was standing approximately ten feet away from Hall as the shooting occurred.

¶5.    Investigator Pamela Wade-Smith of the Covington County Sheriff's Office testified during both the State's and the defendant's cases-in-chief. She had taken photographs of the crime scene and had obtained multiple witness statements. After the State had rested and during the defendant's direct examination of Wade-Smith, defense counsel provided Wade-Smith with a document(s) referencing witness statements and stated, "If you would please, ma'am, handle that document. Study it and then I'm going to ask you some questions about it." After she complied with his request, defense counsel questioned her about the statements she had taken from witnesses:

Q:    So during the course of your investigation of the matter that occurred out there on September 16th, did your investigation reveal that there was another person or persons that had guns in their possession, brandished guns on such date?

A:    We were told that [a man named] Black had a weapon.

Q:    And were you told that by more than one eyewitness?

A:    I think there was actually two that had said that Black had a weapon.

¶6.    After Wade-Smith was tendered for cross-examination, the State sought to have Wade-Smith read from the document(s) which had been provided to her previously by defense counsel. The defense objected to the statement as hearsay and the Court sustained the objection. The State then asked, without objection:

Q:    In all the statements and everything and all the witnesses, does anybody else ever say that somebody else shot "Tubby"?

A:    No.

Q:    Everyone says that it was Eddie Terrell Hall that shot "Tubby"?

A:    That is correct.

Q:    . . . And so your testimony is that no other witnesses came forward to say that Black or anybody else shot "Tubby"?

A:    No, sir. The eyewitnesses did say it was Mr. Terrell Hall, Eddie Terrell Hall.

Q:    Was the only shooter?

A:    Yes, sir.

¶7.    On redirect, the defense asked the following questions:

Q:    So as you're testifying today, is it your testimony that each and every person that you talked to said that Eddie Terrell Hall was the shooter?

A:    I think some of them were calling him a nickname. I cannot remember which the nickname was, but, yes, sir.

      There was no discrepancy about who the shooter was, only how many guns were there.

¶8.    Hall now appeals his conviction of murder and life sentence.

**ANALYSIS**

**I.    WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR DURING THE JURY-SELECTION PROCESS.**

¶9.    Hall argues for the first time on appeal that the trial court erred in instructing Juror Number 1 to act as foreperson, in failing to ask each potential juror if he or she had served on a jury within the last two years, in failing to require potential jurors to completely fill out the jury questionnaire prescribed by Mississippi Code Section 13-5-1, and in automatically dismissing potential jurors who answered in the positive to the question "have any of you

ever been convicted of a crime that is punishable by imprisonment in this state's penitentiary, or any other state's penitentiary, or in the Federal Court system?"

¶10.    Hall has forfeited his right to argue these issues on appeal by failing to object contemporaneously below. Our rule is well-settled that a defendant's failure to object bars that defendant from raising the issue on appeal. *See* M.R.E. 103(a). "We will not hold a trial court 'in error on appeal for a matter not presented to it for decision.'" *Moffett v. State*, 49 So. 3d 1073, 1101 (Miss. 2010) (internal citation omitted). *See* Miss. R. Evid. 103(a)(1). Procedural bar aside, the outcome would be no different.

*A.    Jury Foreperson*

¶11.    Hall claims the trial judge violated his "constitutional rights to an impartial jury as guaranteed him by the Fifth, Fourteenth, and Sixth Amendments to the U.S. Constitution and by Article 3, Section 26 of the Mississippi Constitution." Admitting that no contemporaneous objection was made, Hall asks this Court to consider this error under the plain-error doctrine.

¶12.    While Rule 103(a)(1) serves as a bar, if a defendant fails to object, Rule 103(d) also allows that this Court may take notice of plain errors, if those errors affect a defendant's substantial rights.  M.R.E. 103(d). For the plain-error doctrine to apply, there must have been "an error that resulted in a manifest miscarriage of justice or 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Brown v. State*, 995 So. 2d 698, 703 (Miss. 2008) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 80 L. Ed. 555 (1936)). "Prejudice often is lacking when the weight of the evidence against a defendant is overwhelming." *Moffett v. State*, 156 So. 3d 835, 870 (Miss. 2014), *reh'g denied* (July 31,

6

2014) (citations omitted). Two eyewitnesses testified that Hall was the shooter. Given that the weight of the evidence of Hall's guilt was overwhelming, we discern no manifest miscarriage of justice or that the fairness, integrity, or public reputation of the judicial proceeding was seriously affected.

### B. Prior Service

¶13. Personal privilege exemptions under Mississippi Code Section 13-5-25 "are not mandatory and must be asserted by the individual." *Spires v. State*, 10 So. 3d 477, 482 (Miss. 2009); Miss. Code Ann. § 13-5-25 (Rev. 2012). Judges also may require jurors who have sat on a jury within the last two years to serve if there is a lack of potential jurors. Miss. Code Ann. § 13-5-25.

### C. Jury Questionnaire

¶14. The record makes clear that some jurors failed to answer a question related to whether they previously had sat on a criminal jury, but that omission was corrected by direct questioning of the venire at *voir dire*.

### D. Prior Convictions

¶15. Mississippi Code Section 13-5-1 requires that jurors be questioned about prior convictions. Miss. Code Ann. § 13-5-1 (Rev. 2012). The judge asked if anyone had a conviction resulting in imprisonment. The petit juror's answer of yes and explanation that he previously had been convicted of drug violations in federal court fulfilled the requirement of the statute to dismiss this juror.

7

¶16.    While the trial court erred in appointing the jury foreperson, we find that the trial court either did not commit error or cured its error in the remaining jury-selection issues raised by Hall. None of these four issues can be to shown to have affected the outcome of Hall's trial. *Catholic Diocese of Natchez-Jackson v. Jaquith*, 224 So. 2d 216, 221 (Miss. 1969); *Gray v. State*, 799 So. 2d 53, 61 (Miss. 2001); *Jefferson v. State*, 818 So. 2d 1099,1112 (Miss. 2002).

## II.    WHETHER HALL RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

¶17.    To demonstrate ineffective assistance of counsel, a defendant must show that 1) counsel's performance was deficient and 2) that the deficient performance caused prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 674 (1984).

> We look at the totality of the circumstances to determine whether counsel's efforts were both deficient and prejudicial. There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Only where it is reasonably probable that, but for the attorney's errors, the outcome would have been different, will we find that counsel's performance was deficient.

*Dartez v. State*, 177 So. 3d 420, 423 (Miss. 2015) (citing *Strickland*, 466 U.S. at 687)). Quite often, ineffective-assistance-of-counsel claims are brought during post-conviction proceedings because of the limitations during a direct appeal to the trial-court record and the fact that sufficient evidence may not exist within the record to address the claim adequately. *See Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008). However, such a claim may be raised

on direct appeal "if such issues are based on facts fully apparent from the record." M.R.A.P. 22(b); *see also **Cage v. State***, 149 So. 3d 1038, 1046 (Miss. 2014).[2]

### A. Failure to Object to Hearsay

¶18. Hall argues that he received ineffective assistance of counsel due to his counsel's failure to object as hearsay to Investigator Wade-Smith's testimony, quoted *supra*, which was elicited during the State's cross-examination. The State presents two arguments. First, the testimony of Wade-Smith was not hearsay. In the alternative, the State argues that, if the testimony was hearsay, Hall was not prejudiced by the specific testimony and cannot meet the second prong of ***Strickland***. The State's alternative argument is dispositive.

¶19. During the defendant's case-in-chief, defense counsel provided Wade-Smith with nontestifying witness statements before procuring Wade-Smith's testimony that others had reported seeing another person with a gun at the scene. Wade-Smith testified that two individuals had identified a person named Black as also displaying a weapon.

¶20. On cross-examination, the State asked Wade-Smith to read directly from the documents furnished to her by defendant's counsel. Defense counsel objected to the statements being introduced. The trial court refused to allow the witness to read directly from the statements. The State then asked Wade-Smith, without objection, if during her investigation any witness had ever come forward stating that someone other than Hall was

_____

[2] Hall did not raise the earlier-stated four issues of alleged trial-court error as part of his ineffective-assistance-of-counsel claim. Had they been raised, Hall would be unable to show that he suffered any prejudice, as required by the second prong of ***Strickland***.

the shooter. She responded that all witnesses from whom she had obtained statements identified Hall as the shooter.

¶21. Assuming *arguendo* that this testimony was hearsay, to determine if the attorney's failure to object to the testimony was error, we must decide if it is "reasonably probable that, but for the attorney's errors, the outcome would have been different. . . ." ***Dartez***, 177 So. 2d at 423 (citing ***Strickland***, 466 U.S. at 687)). Regardless if Black or any other person exhibited guns, there was no testimony or evidence that anyone other than Hall fired the fatal shots. Because the overwhelming evidence supported Hall's conviction, we find that it is not reasonably probable that, had the complained-of hearsay not been admitted, the outcome would have been different. Thus, any error in counsel's failure to object to the hearsay was harmless, and Hall's counsel was not ineffective. *See **Jackson v. State***, 645 So. 2d 921, 924 (Miss. 1994) (quoting ***Newsom v. State***, 629 So. 2d 611, 612 (Miss. 1993)) ("[w]e are not required to reverse a case based solely upon the showing of an error. . . .").

¶22. Hall also argues that "his constitutional rights guaranteed him by the Sixth Amendment and Article 3, Section 26 were violated." In addition to his ineffective-assistance-of-counsel argument failing, Hall's constitutional argument also fails.

> This Court, in the recent case of ***Hansen v. State***, 592 So. 2d 114 (Miss.1991), utilized the authority recognized in ***Chapman*** [***v. State of California***, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)] "to hold offenses to certain of an accused's constitutional rights do not per se require reversal." ***Id.*** at 135. The Court in ***Hansen*** stated the reviewing court must first objectively examine the [ . . . ] evidence considered by the jurors in reaching their verdict. The final analysis is whether:
>
> > the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave

10

it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [rights violation]. . . . *Hansen*, 592 So. 2d at 136 (citations omitted).

*Taylor v. State*, 672 So. 2d 1246, 1267 (Miss. 1996). *See also Walker v. State*, 913 So. 2d 198, 240 (Miss. 2005). This Court is satisfied that no injustice occurred based upon the overwhelming evidence of Hall's guilt.

### B. Request for Manslaughter Plea

¶23. Hall argues that his trial attorney was ineffective for requesting a manslaughter plea when the potential jurors were present in the courtroom. Based upon Hall's own argument that "we do not know if Hall's legal counsel's statement to the judge was heard by any of the potential jurors, but if it was heard, then obviously that was extremely prejudicial to Hall," this Court cannot find that sufficient evidence exists within the record to address the claim adequately. *See Archer*, 986 So. 2d at 955. Therefore, that claim is dismissed without prejudice, to be raised on post-conviction review if Hall elects to proceed in that manner.

### CONCLUSION

¶24. For the reasons stated herein, we affirm Hall's conviction and sentence.

¶25. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., LAMAR, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. KITCHENS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., LAMAR, KING AND MAXWELL, JJ.; COLEMAN, J., JOINS IN PART. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**KITCHENS, JUSTICE, SPECIALLY CONCURRING:**

11

¶26.    The permissive language of Uniform Rule of Circuit and County Court Practice 3.10 grants the trial court discretion with regard to directing the jury to select a foreperson. That rule provides that "[t]he court *may* direct the jury to select one of its members to preside over the deliberations . . . ." URCCC 3.10 (emphasis added). In the case of **Ballenger v. State**, this Court spoke to the question of the court's appointment of a foreperson of a trial jury. **Ballenger v. State**, 667 So. 2d 1242, 1258 (Miss. 1995).[3] We held that "[i]n the future, trial judges are *advised* not to appoint jury foreman. Who is to be the foreman is a decision which *should* be made by fellow jurors." **Id.** at 1259 (emphasis added). The Court did not say that error would result from the trial court's appointment of a jury foreperson; it merely advised trial judges not to do so.

¶27.    This case involves a *petit* jury. By contrast, in the context of grand jury proceedings, the trial court is required by rule to appoint a foreperson: "[t]he court *shall appoint* one member of the grand jury as foreman, who shall take the oath prescribed in § 13-5-45 of the Mississippi Code of 1972." URCCC 7.02 (emphasis added).

¶28.    Because this Court's precedent and its rules, as they now appear, do not prohibit a trial judge's selection and appointment of a foreperson for a *petit* jury, I would hold that the judge in the instant case committed no error in that regard, harmless or otherwise. I would affirm.

**WALLER, C.J., DICKINSON, P.J., LAMAR, KING AND MAXWELL, JJ., JOIN THIS OPINION.  COLEMAN, J., JOINS THIS OPINION IN PART.**

---

[3] This Court subsequently granted post-conviction relief on other grounds. **Ballenger v. State**, 761 So. 2d 214 (Miss. 2000).

12