DICKINSON, PRESIDING JUSTICE,
DISSENTING:
¶ 33. Because Butler and Mathis were familiar with Lenoir, the majority correctly finds no error in the trial judge’s decision allowing them to provide lay opinions about the perpetrator’s identity.[4] But this conclusion does not dispose of this case. Lay opinion about a perpetrator’s identity will, in most cases, suffice to support a conviction. But not always. For instance, it would be absurd to suggest that a reasonable jury could find guilt beyond a reasonable doubt, where its verdict rested solely on the relevant, admissible testimony of a witness who looked at a video and opined that the defendant was the person in the video because both have big ears, when no other evidence suggests the defendant committed the crime.
¶ 34. Here, no reasonable juror could find guilt beyond a reasonable doubt based on this lay opinion testimony about the perpetrator’s identity because the identifications are not sufficiently definite—containing reasonable doubt within themselves—and because the witnesses solely based their opinions on a foundation itself wrought with reasonable doubt. But to the few who read this dissent, do not take my word for it. Consider whether you believe a reasonable juror could determine guilt beyond reasonable doubt after viewing the video for yourselves.[5]
¶ 35, Actual, positive identification of the perpetrator in this case does not exist. Instead, the prosecution’s case rested entirely , on lay opinions that, the person’s clothes and walk were similar to those of the defendant, even though neither contained any discernable characteristic. We have the duty to review the evidence to be *281 sure a reasonable juror could find it is capable of supporting a conviction beyond a reasonable doubt. Here, one could not.
¶ 36. The surveillance video of this robbery is so pixilated that no reasonable juror—or witness for that matter—could positively identify the defendant from the video alone. During the two seconds the robber’s face is exposed, that his face appears to be nothing more than a blur with no distinguishable characteristics. One cannot even determine the nose from the mouth. And during the rest of the video, both mfen are wearing masks. No one—no matter how familiar with Lenoir—could identify him by facial recognition.
¶ 37. So, having no other evidence against Lenoir, and recognizing the video itself would get it nowhere, the State introduced opinions from Butler, Mathis, and Catehings to identify the defendant. This was the only evidence linking Lenoir to the robbery: the testimony .of persons who looked at a pixilated video and testified that the person in the video was Lenoir because they recognized his clothes—the perpetrator was wearing an unremarkable black tee shirt and unremarkable black shorts, and apparently, Lenoir owned a black tee shirt and a pair of black shorts— and they recognized the way he walked. Nothing distinguishing or unusual can be discerned about the walk of the person in the video, and the majority identifies none. Not even a limp.
¶ 38. And as for the black tee shirt and black shorts worn by the person in the video, neither contains a logo, emblem, tear, or any other feature that would distinguish these items of clothing from any other black tee shirts and shorts; and again, by its silence, I must assume the majority finds none.
¶ 39. Catehings admitted that, during his interrogation of Lenoir, he denied being the robber. And while Catehings testified that Lenoir shrugged his shoulders during the interrogation when asked why he robbed the store, neither Catehings nor the majority has any way of knowing what Lenoir meant by this gesture, particularly in light of his consistent denials that he had anything to do with the crimé.
¶ 40. In this ease, there are no eyewitnesses. There is no forensic evidence. No fingerprints, DNA, or hair. So wé are left with a conviction based solely on witnesses who looked at a pixilated video and testified that the person in the '' video had clothes like Lenoir and walked like Lenoir. And both the clothes and the walk were not distinctive in any way. That evidence, in my view, is insufficient for a finding beyond a reasonable doubt of guilt. No reasonable juror could reject the doubt inherent in opinions based bn such ambiguous criteria.
¶ 41. Lenoir moved for a directed verdict at the close of the prosecution’s case-in-chief; however, he did not raise the sufficiency of the evidence on appeal—although his weight-of-the-evidence argument reads more like a sufficiency-of-the-evidence argument, challenging the State’s proof of his identity. So the only avenue for review is the plain-error doctrine.[6] “For the plain-error doctrine to apply, there must have been ‘an error that resulted in a manifest miscarriage of justice or seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.’ ”[7]
*282 ¶ 42. Further, when assessing the legal sufficiency of a conviction, this Court determines “ ‘whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ”[8] This Court must reverse a conviction “[i]f facts and inferences considered by the Court ‘point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.’ ”[9]
¶ 43. I do not contend that the jury was not free to believe the opinions of Butler, Mathis, and Catchings. The jury certainly could accept as true that the witnesses actually believed Lenoir was the man in the video and, in fact, I assume they did. But, given the facts in this case, those opinions, standing alone, are insufficient to lead any reasonable juror to conclude beyond a reasonable doubt that Lenoir committed the crime.
¶ 44. There can be no greater miscarriage of justice than to allow a conviction to stand based on wholly insufficient evidence. Accordingly, I would reverse Lenoir’s convictions of armed robbery and conspiracy to commit armed robbery and render judgment in his favor.
' KITCHENS AND KING, JJ., JOIN THIS OPINION.

. United States v. Jackman, 48 F.3d 1, 5 (1st Cir. 1995).

. https://courts.ins.Kov/Newsite2/appellate courts/sc/oawebcasts ,php? vid=D 6 AOxI7 FyB 4

. Green v. State, 183 So.3d 28, 30 (Miss. 2016) (citing Holmes v. State, 798 So.2d 533, 534 (Miss. 2001); Miss. R. Evid. 103(d); Miss. R. App. P. 28(a)(3)).

. Hall v. State, 201 So.3d 424, 428 (Miss. 2016) (quoting Brown v. State, 995 So.2d 698, 703 (Miss. 2008)).

. Graham v. State, 185 So.3d 992, 998 (Miss. 2016) (quoting Bush v. State, 895 So.2d 836, 843 (Miss. 2005)).

. Id. (quoting Bush, 895 So.2d at 843).