# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-01083-SCT

*DIAMANTE QUANTAE MYERS a/k/a DIAMONTE*
*QUANTAE MYERS a/k/a DIAMANTE MYERS*
*a/k/a DIAMANTE QUANTE MYERS a/k/a MAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/28/2023 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| TRIAL COURT ATTORNEYS: | JOHN MORGAN DOWDY, JR. |
| | CHRISTINA HOPSON HOLCOMB |
| | JANSEN TOSH OWEN |
| | JOSHUA CHRISTIAN STIGLET |
| | ANDREW ARMAN MIRI |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE M. McMILLIN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ASHLEY L. SULSER |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/21/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1. In 2023, Diamante Myers stood trial for shooting into a dwelling under Mississippi Code Section 97-37-29 (Rev. 2020) as to count one of his indictment and for aggravated assault with a deadly weapon under Mississippi Code Section 97-3-7(2)(a)(ii) (Rev. 2020)

as to count two. Myers was also indicted and sentenced upon conviction as a habitual offender under Mississippi Code Section 99-19-81 (Rev. 2020). The jury found Myers guilty on both charges. Myers appealed, contending that the trial court committed plain error by granting jury instruction S-3, which he alleges constituted an impermissible constructive amendment to his indictment. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On November 2, 2020, Abasi Bolden was cooking in his yard on the corner of Morris and J.C. Bolden Street in Picayune, Mississippi, while waiting for the school bus to drop off his children. Bolden was speaking to his sixty-year-old cousin Roderick Williams and his sister Nicole Williams when another cousin of Bolden's, Diamante Myers a.k.a Man, approached Bolden as his kids were getting off of the school bus.

¶3.     Bolden recounted that

> [Myers walked] across the yard talking about killing me. You know, so I already done took offense. So now I got my kids. I told them to get in the house. My kids get in the house. So now I'm out there. He's in my yard, in my driveway, talking about how he could have killed me the night before. He seen me in my laundry room. He could have killed me the night before.
>
> . . . .
>
> So now my cousins pull off. They don't want nothing to do with this. We were exchanging words now. So I put the seasoning down on the ground. I said, "[y]ou got two seconds to get out of my yard." He started yapping.
>
> . . . .
>
> [H]e picked the seasoning up and hit me in my face with it. He threw it and hit me in the face with it. That's when we started fighting.

2

. . . .

> The guys [from around the neighborhood] broke us up, and . . . drug him into the next yard, got himself together. They held me back. They then come back in my yard and get all his belongings and he walked—proceeded to walk out of my yard and told me that he was going to come back and shoot my house. He said, "get your kids out of the house because I'm going to shoot this house up."

¶4.     As Myers wore an ankle monitor with GPS tracking capabilities that day, evidence of his approximate locations following the physical altercation with Bolden was presented to the jury. An offender service was contacted by the prosecution to obtain the data collected from Myers's ankle monitor and to prepare a crime-scene correlation report. The crime-scene correlation report revealed that following Myers's altercation with Bolden, Myers remained in the same area and soon thereafter traveled back to Bolden's residence.

¶5.     Bolden, who was still cooking in his yard, heard someone yelling profanities at him. He looked down the road and saw Myers pull out a gun. Bolden recounted that

> Once I seen him aiming it, I jumped behind the big oak tree [in the yard]. . . . And when he started shooting, so I hit the deck. I got a brick wall right behind that. So I crawled behind a brick wall. After the shooting stopped, I crawled in the house and got to my kids and made sure my kids were safe. Everybody is screaming and hollering. Now I'm instructing them to get under the bed. Don't just be in the room, get under the bed.
>
> . . . .
>
> Once I got them under the bed—five kids—I crawled back out. I came back out to the front. I looked and he was still standing there on the corner. And when I came out and . . . kind of picked my head up, that's when he took off running through the alley.

3

¶6.    Bolden wrote in his statement to law enforcement that Myers wore a "red hat with ALABAMA letters spelled out, gray hoodie, and blue jeans."  The prosecution presented Bolden with a photograph of Myers following his arrest wearing a red Alabama hat and a gray hooded sweatshirt.  Bolden confirmed that the individual in the photograph was Myers, who was the person who had shot at him.

¶7.    Roderick Williams was sitting on a porch around forty to fifty yards away from Bolden's residence when he heard what sounded like firecrackers going off.  Williams testified that while watching a little road that connected to Cousin Street, he saw someone running through the bushes wearing a gray hooded sweatshirt and blue jeans.  Despite not seeing his face, Williams believed this individual was "Man" because he had observed Myers's clothing during the altercation between Myers and Bolden earlier that afternoon.

¶8.    Eighty-year-old Addie Mae Bullock lived on the corner of Cousin Street and J.C. Bolden Street, immediately behind Bolden's residence.  She was watching television in her den when she heard something hit the side of her house.  Bullock began to walk outside until her next door neighbor told her to get back inside the house.  When Bullock was able to safely walk outside, she noticed that one of her windows had been shattered.

¶9.    Rhonda Johnson of the Picayune Police Department was dispatched regarding shots fired on Morris Street.  Johnson located a projectile that was lodged in the large oak tree in between Bolden's and Bullock's yard where Bolden had initially taken cover.  Johnson also determined that Bullock's window had been shattered by a bullet.

4

¶10. Myers was apprehended within a mile from Bolden's residence. When Myers was in custody, Johnson performed a gunshot-residue test on both of his hands. Johnson submitted the testing kit to the Mississippi Forensics Laboratory. A certified laboratory report issued by the Mississippi Forensics Laboratory revealed that gunshot residue was present on the back of Myers's right hand and on his left palm.

¶11. In January 2022, a Pearl River County grand jury indicted Myers for shooting into a dwelling under Mississippi Code Section 97-37-29 in count one and for aggravated assault with a deadly weapon under Mississippi Code Section 97-3-7(2)(a)(ii) in count two. Myers was also indicted as a habitual offender under Mississippi Code Section 99-19-81. In June 2023, Myers stood trial. After the prosecution rested its case-in-chief, Myers moved for a directed verdict. The trial judge denied his motion. The jury found Myers guilty on both charges. Myers appealed, contending that the trial court committed plain error by granting jury instruction S-3, which he alleges constituted an impermissible constructive amendment to his indictment. Finding no error, we affirm.

**STANDARD OF REVIEW**

¶12. "Generally, a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred." *Parker v. State*, 30 So. 3d 1222, 1227 (Miss. 2010) (citing *Walker v. State*, 913 So. 2d 198, 216 (Miss. 2005)). "For the plain-error doctrine to apply, there must have been 'an error that resulted in a manifest miscarriage of justice or "seriously affect[s] the fairness, integrity or

5

public reputation of judicial proceedings."'"" *Hall v. State*, 201 So. 3d 424, 428 (Miss. 2016) (alteration in original) (quoting *Brown v. State*, 995 So. 2d 698, 703 (Miss. 2008)). "To determine if plain error has occurred, this Court must determine 'if the trial court has deviated from a legal rule, whether that error is plain, clear[,] or obvious, and whether that error has prejudiced the outcome of the trial.'" *Conner v. State*, 138 So. 3d 143, 151 (Miss. 2014) (alteration in original) (internal quotation marks omitted) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (Miss. 2013)).

**I      Whether the decision to grant jury instruction S-3 constituted plain error.**

¶13.    Myers raises for the first time on appeal that jury instruction S-3 failed to include the specific residence that he was accused of firing into, i.e., Addie Bullock's residence, which Myers contends omitted an essential element of the offense charged in his indictment. This Court has held that failing to object to a jury instruction as constructively amending an indictment waives the issue on appeal. *Neal v. State*, 15 So. 3d 388, 397 (Miss. 2009). Because Myers failed to object to instruction S-3, the Court's review is limited to plain-error analysis.

¶14.    According to this Court, "[n]ot all variances between the indictment and instructions constitute a constructive amendment, nor do they rise to plain error." *Bell v. State*, 725 So. 2d 836, 855 (Miss. 1998). "A constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements

6

alleged by the grand jury in its indictment." *Id.* As long as the change does not "materially alter facts which are the essence of the offense on the fact of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood" in a way that would prejudice the defendant's case, then the amendment is permissible. *Miller v. State*, 740 So. 2d 858, 862 (Miss. 1999) (quoting *Greenlee v. State*, 725 So. 2d 816, 819 (Miss. 1998)).

¶15. Regarding count one, Myers's indictment reads:

> [O]n or about November 2, 2020, in Pearl River County, Mississippi, did willfully, unlawfully feloniously discharge a firearm, into the dwelling house usually occupied by persons whether actually occupied or not, that is the home of Addie Bullock, located at . . . Picayune, MS, against the peace and dignity of the State of Mississippi, contrary to and in violation of Section 97-37-29 . . . .

¶16. Jury instruction S-3 reads:

> Diamante Quantae Myers aka Man is charged in count 1 with shooting into a dwelling house. If you find beyond a reasonable doubt from the evidence in this case that:
>
> 1. On or about November 2, 2020, in Pearl River County;
>
> 2. Diamante Quantae Myers aka Man willfully and unlawfully discharged or shot a firearm into a dwelling house.
>
> Then you shall find Diamante Quantae Myers aka Man guilty of count 1, shooting into a dwelling house.
>
> If the State did not prove any one of the above listed elements beyond a reasonable doubt, then you shall find Diamante Quantae Myers not guilty of count 1.

¶17. Under Mississippi Code Section 97-37-29,

7

If any person shall willfully and unlawfully shoot or discharge any pistol, shotgun, rifle or firearm of any nature or description *into any dwelling house* or any other building usually occupied by persons, whether actually occupied or not, he shall be guilty of a felony whether or not anybody be injured thereby and, on conviction thereof, shall be punished by imprisonment in the state penitentiary for a term not to exceed ten (10) years, or by imprisonment in the county jail for not more than one (1) year, or by fine of not more than five thousand dollars ($5,000.00), or by both such imprisonment and fine, within the discretion of the court.

Miss. Code Ann. § 97-37-29 (Rev. 2020) (emphasis added).

¶18.    "The purpose of an indictment is to furnish the defendant with notice and a reasonable description of the charges against him so that he may prepare his defense." *Clark v. State*, 343 So. 3d 943, 998 (Miss. 2022) (internal quotation marks omitted) (quoting *Goff v. State*, 14 So. 3d 625, 665 (Miss. 2009)).  "Indictments that fairly track the language of the controlling statute sufficiently place defendants on notice of the charges against which they must defend." *Id.* at 998-99 (citing *Batiste v. State*, 121 So. 3d 808, 836 (Miss. 2013)). "[E]lements instructions that accurately track the language of the statute, likewise, are legally sufficient." *Id.* at 999 (citing *Rubenstein v. State*, 941 So. 2d 735, 772 (Miss. 2006)).

¶19.    In the case sub judice, the phrase "into a dwelling house" appears in instruction S-3 while "into the dwelling house . . . that is the home of Addie Bullock" was the language used in Myers's indictment.  Mississippi Code Section 97-37-29 contains the phrase "into any dwelling house" when setting forth the elements the prosecution is required to prove.  "[I]nto any dwelling house" necessarily includes the home of Bullock.  The language used in instruction S-3 neither materially altered the essential elements of the offense nor did it alter

8

any defense that Myers possessed as his indictment read.  The trial judge's decision to grant instruction S-3 was not plain error.

## CONCLUSION

¶20.   Because the language used in instruction S-3 did not constitute an impermissible constructive amendment to Myers's indictment, Myers's contention of plain error is without merit.  Accordingly, we affirm.

¶21.   **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**