# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01268-COA

**TROY PRENELL JOHNSON A/K/A TROY P. JOHNSON A/K/A TROY JOHNSON**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/30/2024 |
| TRIAL JUDGE: | HON. DINA RICHELLE LUMPKIN |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | STACY L. FERRARO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/09/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1.    A Lamar County Circuit Court jury found Troy Johnson guilty of one count of burglary of a dwelling, two counts of auto burglary, one count of possession of a stolen firearm, and two counts of attempted capital murder. At the sentencing hearing, the circuit court granted Johnson's motion for judgment notwithstanding the verdict as to the possession of a stolen firearm conviction.[1] The circuit court sentenced Johnson to serve consecutive

---

[1] The charge was dismissed with no objection from the State because Johnson did not have the opportunity to confront his accuser. The indictment was amended to renumber the counts to avoid confusion.

terms of twenty-five years for burglary of a dwelling, seven years for each count of auto burglary, fifty years for one count of attempted capital murder, and forty-five years for another count of attempted capital murder in the custody of the Mississippi Department of Corrections. On appeal, Johnson argues (1) the State presented insufficient evidence to prove deliberate design, (2) the trial court erred by allowing the recording of his jail call into evidence, and (3) the trial court erred by allowing the testimonial narration of his recorded police interrogation. Finding no error, we affirm Johnson's convictions and sentences.

## FACTS

¶2. On December 16, 2022, Investigator Scott Wagner and deputies from the Lamar County Sheriff's Office were dispatched to a neighborhood known as Oak Grove about several homes and vehicles being burglarized. A picture of the suspect, later identified as Johnson, was circulated to all law enforcement so they could "have an accurate presentation of what the apparent suspect looked like."

¶3. While canvassing the area during evening hours, Deputy John Vaughn noticed Johnson jumping the fence and alerted other officers over the radio. Deputy Steve Pazos responded to the call and saw Johnson running toward him. Deputy Pazos then got out of his vehicle and began to chase Johnson on foot. Shortly after, Deputy Vaughn arrived, in his marked patrol vehicle with the lights flashing, to aid in the pursuit. Johnson then pulled a gun from his waistband and fired his weapon in Deputy Pazos and Deputy Vaughn's direction as he continued to run away. Johnson shot Deputy Pazos in the back, and a bullet also struck the front of Deputy Vaughn's patrol car while he was in it.

¶4.    Johnson was later arrested at his home and taken into custody. While in custody, Johnson was questioned by Investigator Zach Summers and Special Agent Pete Knight with the Mississippi Bureau of Investigations. A video of the interrogation was admitted into evidence during trial. Due to poor sound quality, Investigator Summers was asked to recall to the jury what occurred during the interrogation. According to Investigator Summers's testimony, Johnson admitted to burglarizing a house and taking two guns. He also admitted to firing his gun, but he claimed that he shot in the air and not at the officers. Investigator Summers revealed that Johnson's claim was not consistent with evidence found at the scene, dash-camera footage, and body-camera footage. Johnson also told officers that he left the gun and the clothes he was wearing that night in the woods. Law enforcement conducted two searches of Johnson's home and found the gun that matched the shell casings found at the scene and the clothing Johnson wore that night.

¶5.    During trial, the State submitted, without objection, a recording of a call Johnson made from jail. Investigator Wagner testified that any calls inmates make are recorded through a phone system. He further testified that both parties, the inmate and the person on the other line, are notified that the phone call is being recorded. The recorded call was found through the course of the investigation and played for the jury during trial. On the call, an unidentified woman informed Johnson that his house and his mother's house had been searched. She stated that his house was trashed and money was stolen. When the woman told Johnson that the officers searched through "the tote" at his mother's house, Johnson responded, "Oh, sh**. They got sh** then."

3

¶6. The jury was also presented with surveillance videos, body-camera videos, dash-camera videos, testimony from witnesses whose homes were burglarized, and officers who responded to the string of burglary calls, including Deputies Vaughn and Pazos. After the State rested, Johnson unsuccessfully moved for a directed verdict on all counts, arguing lack of sufficient evidence to submit to the jury to prove the elements beyond a reasonable doubt. Ultimately, the jury found him guilty of all remaining counts, and his motion for judgment notwithstanding the verdict or a new trial on these counts was denied. Aggrieved, Johnson appealed.

## DISCUSSION

### I. Sufficiency of the Evidence

¶7. In Johnson's first assignment of error, he argues that the State did not present sufficient evidence to support his attempted capital murder conviction.[2] "Sufficiency-of-the-evidence claims are reviewed de novo. When reviewing a challenge to the sufficiency of the evidence, 'the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Brooks*

---

[2] Importantly Johnson's indictment provided that he "willfully, unlawfully, and feloniously design and endeavor to commit an act, which if accomplished, would constitute an offense of murder under Section 97-3-19 . . . by attempting to kill Deputy John 'TJ' Vaughn, a human being, at a time when he was acting in his official capacity as a peace officer . . . but failed to successfully complete the act, contrary to and in violation of Section 97-1-7(2)." Mississippi Code Annotated section 97-1-7(2) (Rev. 2020) defines attempted murder. The statute makes no distinction between murder and capital murder, and they carry the same penalty. Mississippi Code Annotated section 97-3-19 states that the killing of a law enforcement officer without the authority of law by any means or in any manner while such law enforcement officer is acting in his official capacity or by reason of an act performed in his official capacity, and with knowledge that the victim was a law enforcement officer will constitute capital murder. Miss. Code Ann. § 97-3-19(2)(a) (Rev. 2020).

*v. State*, 402 So. 3d 787, 790 (¶7) (Miss. Ct. App. 2025) (citation and quotation mark omitted). We must view the evidence "in the light most favorable to the State." *Id*.

¶8.     Johnson asserts the State failed to prove that he acted with deliberate design to support his conviction for the attempted capital murder of Deputy Vaughn. "The element of deliberate design 'connotes an intent to kill.' The term 'deliberate' means 'a full awareness of what one is doing and generally implies careful and unhurried consideration of the consequences.' The term 'design' 'means to calculate, plan or contemplate.' A person may form a deliberate design to kill quickly, even moments before the fatal act." *Abeyta v. State*, 137 So. 3d 305, 312 (¶15) (Miss. 2014) (citations omitted). Deliberate design may also be inferred from the circumstances, such as the use of a deadly weapon. *Craft v. State*, 970 So. 2d 178, 183 (¶17) (Miss. Ct. App. 2007).

¶9.     The State presented evidence and testimony that Deputy Vaughn approached Johnson in his marked patrol vehicle with the lights flashing and provided cover for Deputy Pazos. Johnson argues that "Deputy Vaughn, knowing the shots were aimed at Pazos[,] chose to heroically insert himself into the line of the gunshots." However, Deputy Vaughn's dash-camera footage directly refutes that claim. As Deputy Vaughn pulled his patrol vehicle closer, Johnson is seen pulling a gun from his waistband, looking back a few times in their direction, and firing his weapon several times toward Deputy Pazos and Deputy Vaughn's patrol vehicle, with him in it. Additionally, the dash-camera footage seemingly shows that one of the bullets hit the front of Deputy Vaughn's patrol vehicle. Thus, considering all the evidence in the light most favorable to the State, a reasonable juror could find beyond a

5

reasonable doubt that Johnson was guilty of attempted capital murder and acted with deliberate design to kill Deputy Vaughn.

## II.     Recording of Jail Telephone Call

¶10.    Johnson next argues that the trial court erred by admitting into evidence a recording of a telephone call from jail without proper authentication. Johnson did not raise this objection to the trial court; therefore, this issue is not preserved for appellate review. On appeal, Johnson asks that we consider this claim for plain error. *See Cole v. State*, 412 So. 3d 1144, 1149 (¶19) (Miss. 2025). We will find plain error if Johnson shows that the trial court deviated from a known legal rule. *Hollingsworth v. State*, 269 So. 3d 456, 459 (¶9) (Miss. Ct. App. 2018). Johnson must also show "an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Hall v. State*, 201 So. 3d 424, 428 (¶12) (Miss. 2016) (internal quotation marks omitted).

¶11.    Evidence must be relevant and properly authenticated to be admitted at trial. *Hollingsworth*, 269 So. 3d at 459 (¶9) (citing MRE 401, 901). "Authentication of evidence requires the offering party to lay a proper foundation." *Riley v. State*, 126 So. 3d 1007, 1009 (¶7) (Miss. Ct. App. 2013). An audio recording can be authenticated through the testimony of a witness with knowledge "that a matter is what it is claimed to be." *Id*.

¶12.    In the case before us, the State asked Investigator Wagner to explain how the telephone system works in the Lamar County Jail. He testified that any inmate has the opportunity to set up an account and "call their family, friends, whoever, through the phone

6

system." Investigator Wagner stated that the inmate and the person on the other line are notified that the phone call is being recorded. Accordingly, after our review of the record, we find that Investigator Wagner's testimony was sufficient to lay a proper foundation, and the court did not deviate from a known legal rule amounting to plain error.

### III. Investigator Narration of Recorded Interview

¶13.    In his last assignment of error, Johnson claims that the trial court erred by allowing Investigator Summers to narrate Johnson's police interrogation played for the jury. Narration of a video is permitted "when the narration simply describes what is occurring in the video." *Russell v. State*, 373 So. 3d 172, 178 (¶21) (Miss. Ct. App. 2023). Johnson agrees that the narration of the video was in accordance with the law to that extent. However, Johnson contends that the jury needed to reach their own conclusion based on "what they themselves heard and observed, and not upon the interpretation of the witness."

¶14.    Here, because the jury could barely hear the police interrogation video, the State asked Investigator Summers to describe what was occurring. Investigator Summers was present during the police interrogation, so he had first-hand knowledge of what occurred during the video. Additionally, Investigator Summers was able to hear the video during his testimony. Narration of a video is impermissible if the witness "attempts to place his own subjective interpretation of events transpiring in the video based on nothing beyond the witness's own inspection of the contents of the videotape." *Carruthers v. State*, 348 So. 3d 1042, 1050-51 (¶20) (Miss. Ct. App. 2022). We find that Investigator Summers's narration of the video was permissible because he provided first-hand knowledge of what was happening at particular

7

points of the interrogation. Therefore, we find this argument unpersuasive.

¶15.   Moreover, even without the narration of the recorded police interrogation, overwhelming evidence supported Johnson's convictions, including multiple surveillance videos, dash-camera and body-camera footage, and witness testimony.

## CONCLUSION

¶16.   For the foregoing reasons, we affirm Johnson's convictions and sentences.

¶17.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR.**