# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CT-00903-SCT

*JIMMIE LESHAUN GARDNER a/k/a JIMMIE L.*
*GARDNER a/k/a JIMMIE GARDNER*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/31/2018 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| TRIAL COURT ATTORNEYS: | KEVIN DALE CAMP |
| | ASHLEY RIDDLE ALLEN |
| | GREGORY VINSON MILES |
| | MICHAEL GUEST |
| | JOHN K. BRAMLETT, JR. |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SANFORD E. KNOTT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART, AND THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS REINSTATED AND AFFIRMED - 03/26/2026 |
| MOTION FOR REHEARING FILED: | |

### CONSOLIDATED WITH

### NO. 2018-KA-01337-SCT

EN BANC.

RANDOLPH, CHIEF JUSTICE, FOR THE COURT:

¶1.     Jimmie Gardner ("Gardner") was indicted and convicted for cocaine possession and felony evasion, and he was sentenced as a nonviolent habitual offender under Mississippi Code Section 99-19-81 and a subsequent drug offender under Mississippi Code Section 41-29-147. Gardner appealed, and the appeal was assigned to the Court of Appeals. Gardner raised the following issues: (1) the evidence was insufficient to show Gardner possessed cocaine, (2) the trial court erred by admitting Gardner's prior felony convictions into evidence, (3) the trial court committed plain error by granting a flight instruction, and (4) the trial court erred by sentencing Gardner as a habitual offender. The Court of Appeals ruled on issues (1) and (2) as dispositive.

¶2.     The Court of Appeals held that issue (1) was without merit because the evidence was sufficient to support Gardner's cocaine conviction. *Gardner v. State*, 412 So. 3d 486, 497-500 (Miss. Ct. App. 2024). However, the court also held that the prior felony issue was not procedurally barred and that the trial court's analysis failed to satisfy case law and Mississippi Rule of Evidence 609(a)(1)(B). *Id.* at 493-97, 500. Without citation, the Court of Appeals also opined that Rule 609(a)(1)(B) "*tilts*" against admission of prior felony convictions while Mississippi Rule of Evidence 403 "*tilts*" toward admission of such evidence. *Id.* at 495 (emphasis added).

¶3.     The State sought a writ of certiorari, which this Court granted. The State argued the Court of Appeals erred by (1) holding the issue of Gardner's prior convictions was not procedurally barred on appeal, (2) holding Rule 609(a)(1)(B) tilts against admission of a

2

defendant's prior convictions and furthermore that the trial court applied the wrong standard, (3) holding the trial court's **Peterson**[1] analysis was inadequate, and (4) conducting a *de novo* **Peterson** analysis.

¶4. After a complete and thorough review of the record and the applicable law, we reverse the judgment of the Court of Appeals on issue (2) and reinstate and affirm the judgment of the trial court on all issues. A detailed reading of the record clearly reveals Gardner's objections to the prior convictions' admissibility were unrelated to the seasoned judge's Rule 609(a)(1)(B) analysis. Thus, the law mandates that this Court find the issue procedurally barred.

¶5. Not only is the issue procedurally barred, but we also find "the Court of Appeals has rendered a decision which is in conflict with a . . . published Supreme Court decision . . . ." Miss. R. App. P. 17; **Bush**, 895 So. 2d 836. Notwithstanding the procedural bar, a detailed review of the record reveals that the claim is without merit since the trial judge properly considered the **Peterson** factors as shown by his consideration of a factor in **Peterson** that is not listed in the rules. *See infra* ¶ 46.

¶6. Finally, an exhaustive Boolean search of the word *tilt* reveals that neither the Mississippi Rules of Evidence nor this Court's case law even suggest that the Rules *tilt* in

---

[1] **Peterson v. State**, 518 So. 2d 632, 637 (Miss. 1987), lists factors for a trial court to use when undertaking a Mississippi Rule of Evidence 609(a)(1)(B) analysis. **Bush v. State**, 895 So. 2d 836 (Miss. 2005) (citing **Peterson**, 518 So. 2d at 647-48), *abrogated on other grounds by* **Little v. State**, 233 So. 3d 288 (Miss. 2017); *infra* Part I(b)-(d).

favor of one rule over the other. *See* Miss. R. Evid. Order Adopting the Mississippi Rules of Evidence; Miss. R. Evid. 102. Accordingly, we reverse the judgment of the Court of Appeals on that issue, affirm the judgment of the Court of Appeals as to the sufficiency-of-the-evidence issue, and affirm the judgment of the trial court on all other issues.

## FACTS AND PROCEDURAL HISTORY

### I.      Facts

¶7.      On September 4, 2016, at 9:05 p.m., Ridgeland Police Officer Ryan Jungers ("Jungers") came upon traffic approaching a police checkpoint on a two-lane, one-way road. As he and the cars immediately in front of him drove on the one-way road, the cars in front of him abruptly engaged their brakes, which activated their brake lights. Almost simultaneously, Jungers observed, and his car camera recorded, a black car driving the wrong way into oncoming traffic with its head lights off. Jungers immediately whisked around, activated his blue lights and sirens, and pursued the black car. The black car continued to an unknown destination at speeds near one hundred miles per hour. Jungers's car camera also recorded the black car initially driving against traffic, running multiple red lights and a stop sign, and passing other cars in no-passing zones. Six minutes later, the black car entered a cul de sac, drove through a residential yard, and finally crashed into a ditch. The occupants exited the black car and ran in different directions. The driver, later identified as Gardner, was not apprehended that night. However, the passenger was. Jungers and his K-9 dog captured Julian Smith ("Smith") after pursuing him on foot. Smith resisted before yielding

4

to his arrest. On multiple occasions, such as while being transported to the police station in a second officer's car, Smith identified the driver as his good friend Jimmie Gardner.

¶8.    Smith also signed a statement taken the night of September 4, 2016. According to Smith, when Gardner saw the roadblock, Gardner "paniced [sic] and turned around into ongoing traffic and went the other way . . . ." Smith "*repeatedly* asked him to stop and let [him] out but he wouldn't slow down . . . ." (Emphasis added.) He also said he "was going to jump and dud [sic] he never slowed down enough for me to get out . . . ."

¶9.    Found in the car were a rental agreement signed by Early Gardner, Gardner's mother; a small amount of cocaine; two bottles prescribing codeine to Jimmie Gardner, neither containing codeine but one containing marijuana; and other bottles containing what was later tested as codeine. Based on Jungers's preliminary findings and Smith's identification, an arrest warrant was issued for Gardner. Later, Gardner saw on television that he was wanted, but he chose not to turn himself in. On September 14, 2016, a task force consisting of the United States Marshals Service and local law enforcement arrested Gardner at his home, where he was attempting to hide under his three-year-old daughter's bed. Gardner was subsequently indicted and sentenced for possessing cocaine and felony evasion, and he was sentenced as a subsequent drug offender and nonviolent habitual offender.

## II.    Procedural History

¶10.   At trial, the State presented evidence and testimony from law-enforcement officers and Smith identifying the driver of the black car as Gardner.

5

¶11.    After Jungers testified as to the pursuit and subsequent investigation,[2] the State called Smith. Smith testified that he and Gardner were good friends and were returning from a barbershop that evening at around 9:00 p.m. The ordeal began before Gardner reached the checkpoint. Gardner turned around into oncoming traffic, and Jungers had his blue lights flashing and sirens blaring. Smith testified he wanted to get out of the car, but Gardner was driving so fast that Smith never could safely exit. Smith's testimony was consistent with the video from Jungers's car, another video from the car used to transport Smith to the police station,[3] and Smith's signed statement from the night of September 4, 2016. Smith testified he was unaware of any drugs in the car. On cross-examination, Smith testified he only ran because he was afraid of the officer's K-9.

¶12.    After Smith, the State called the task-force leader that arrested Gardner at his home. He testified that he first encountered Crystal Gray, Gardner's girlfriend of eight years and the mother of his children. She initially claimed that Gardner was not there. After she was asked to step outside, she admitted Gardner was in the home. Officers entered the home to arrest him. They found him hiding under a child's bed, and he resisted until he was tased. After the arresting officer's testimony, the State rested.

¶13.    Gardner first called his girlfriend, Crystal, and then his sister Tonya White, who was living with them at the time, as alibi witnesses. Crystal and Tonya both said Gardner was

---

[2]The car camera video from Jungers's car was entered during Jungers's testimony.

[3]This video was entered into evidence during Smith's direct examination.

home from 9:00 p.m. to 11:00 p.m. the night of September 4, 2016, and neither knew Smith. On cross-examination, White did admit she had previously told a State investigator she could only testify that Gardner was home at 11:00 p.m..

¶14.    After White stepped down, Gardner elected to testify. First, the judge read him his rights and gave him proper warnings. Then, a discussion arose regarding Gardner's prior convictions for burglary of a house in 2010 and possession of codeine in 2014.[4] When discussing the rules under which the convictions might be admitted, the following exchange took place in open court:

> [THE COURT:] Mr. Camp [defense counsel], let me ask you, are you intending on bringing out those convictions in your direct examination?
>
> MR. CAMP: *No, Your Honor*.
>
> MR. MILES [prosecutor]: I believe . . . it falls under 609(a)[5] --
>
> THE COURT: 609(a)(1)(B).
>
> MR. MILES: Yes, sir.
>
> THE COURT: *And* I've got to do a balancing test under 403.
>
> MR. MILES: Yes, sir.
>
> . . . .
>
> THE COURT: . . . [T]here's nothing more than ten years old, so I don't have

---

[4]Gardner testified he was prescribed codeine both at the time of his possession conviction and at the time of this trial because he had permanent bronchitis.

[5]Mississippi Rule of Evidence 609(a) reads "The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction . . . ."

to make any kind of finding relative to 609(b).[6]

MR. CAMP: That's correct, Your Honor.

THE COURT: Do you want a limiting instruction to be given?

MR. CAMP: Yeah. If you let it in, we would want a limiting instruction, Your Honor.

THE COURT: All righty.

MR. CAMP: We would rather you not let it in, if I had my choice between those two.

THE COURT: I figured that.

(Emphasis added.)

¶15. Upon asking for arguments as to why the court should not admit the prior convictions, defense counsel said:

MR. CAMP: We would just think that it's prejudicial. I don't think either one of those are crimes that bring in the veracity.

I think if -- what's going to happen is we're going to tell the jury that he's been convicted of two crimes, and then that sort of seals the deal at that point.[7]

THE COURT: All righty. Well, realizing by looking at Exhibit A to the indictment, the defendant was convicted of burglary of a house, which I think Mr. Miles stated was burglary of a dwelling - or house burglary, and

---

[6]Mississippi Rule of Evidence 609(b) provides a "**Limit on Using the Evidence After 10 Years.**"

[7]Contrary to the dissent, Camp did not say the convictions will "seal the deal in the jury's mind." Rather, Camp said he would tell the jury that Gardner had been convicted of two crimes and that he would then move on to other questions. This is, in fact, what he did during his direct examination of Gardner.

8

possession of cocaine, first conviction being in February of 2010, second one in July of 2014. And *looking* at the **Peterson** factors --

MR. CAMP: Was it cocaine or codeine?

MR. MILES: Codeine.

THE COURT: If I said cocaine, I meant codeine because that's what the indictment says.

In considering the **Peterson** factors, these -- *at least one of these crimes is not similar at all, that being the burglary of a dwelling.* The defendant has had two prior witnesses -- two alibi witnesses to testify on his behalf. In *looking* at those **Peterson** factors, I believe that, considering everything, it weighs in favor of admissibility. *And* doing the 403 balancing test, I do find that the prejudicial effect of the admission of those convictions is not -- excuse me, the probative value of the admission is not substantially outweighed by the prejudicial effect, so they will be admitted subject to a limiting instruction.

(Emphasis added.) Gardner never raised a **Peterson** objection, a Rule 403 objection, or a Rule 609 objection. After further discussion, the State presented limiting Instruction S-9, which was later given.[8]

¶16.    The trial judge evidenced a clear and accurate knowledge of Rule 609(a)(1)(B). *See supra* ¶ 14. The trial judge nearly quoted the rule verbatim in open court, and he accurately recognized that the rule's purpose is for impeachment of the defendant's character for truthfulness.

¶17.    After defense counsel put Gardner on the stand, and inapposite to counsel's statement

---

[8]Limiting Instruction S-9, which was given as jury instruction 3, instructed the jury that "the evidence of prior convictions is not to be considered by you as evidence that the Defendant committed the crime charged in the Indictment, but may be considered by you only for the limited purpose of impeaching his credibility."

to the court otherwise, by the fourth question, he had Gardner admit two prior felony convictions. *Supra* ¶ 14. Gardner further said he was at home and did not drive the car Jungers had pursued. He said he had not lived with his mother since age twelve[9] and did not have much contact with her since then[10] because she was on cocaine and often rented her cars out to people. Gardner denied Smith was his friend.

¶18.    Gardner admitted he saw on the television that he was wanted by police. He said he did not turn himself in because he wanted to talk with his attorney, who was on vacation at that time. He then claimed he hid from the task force because he thought they were robbers. He also said they broke his teeth. He further denied he put the prescription bottles in the rental car. After Gardner's testimony, the defense rested.

¶19.    Then, the State called a Sheriff's deputy to describe what happened during Gardner's arrest. The deputy contradicted Gardner's claim that the police beat him up and broke his teeth. The State then called the jail administrator, whom the State used to offer into evidence Gardner's intake form, which revealed Gardner had gold teeth when arrested.

¶20.    Gardner was convicted of both counts and sentenced as a nonviolent habitual offender to consecutively serve six years for cocaine possession and five years for felony evasion.

¶21.    The State did not contest Gardner's out-of-time appeal. The issues Gardner raised

_____

[9]Gardner was thirty-six years old at the time of trial.

[10]Gardner gave numerous answers on how often he saw or spoke to his mother since leaving her home. On direct examination, he said he had not talked with her in months. On cross-examination, he said they had not talked since he was age twelve. Later on, he said he last saw his mother in 2013, which was five years before the trial in this case.

were (1) the evidence was insufficient to show Gardner possessed cocaine, (2) the trial court erred by admitting Gardner's prior felony convictions into evidence, (3) the trial court committed plain error by granting a flight instruction, and (4) the trial court erred by sentencing Gardner as a habitual offender.

¶22. The Court of Appeals opined the trial court abused its discretion by admitting Gardner's prior convictions when the trial court (1) applied a Rule 403 standard rather than the Rule 609(a)(1)(B) standard and (2) only analyzed one *Peterson* factor. *Gardner*, 412 So. 3d at 493-95. The Court of Appeals then conducted a *de novo Peterson* analysis and opined that the convictions should not be admitted under Rule 609(a)(1)(B). *Id.* at 495-97. The Court of Appeals further opined that the evidence was sufficient to find Gardner guilty. *Id.* at 497-99. The Court of Appeals reversed Gardner's convictions and remanded the case for a new trial without addressing the remaining two issues. *Id.* at 499.

¶23. The State then sought a writ of certiorari, arguing the Court of Appeals erred by (1) holding the prior-felony-conviction issue was not procedurally barred, (2) holding Rule 609(a)(1)(B) *tilts* against admission of a defendant's prior convictions and that the trial court applied the wrong standard, (3) holding the trial court's *Peterson* analysis was inadequate, and (4) conducting a *de novo Peterson* analysis. This Court granted the State's petition. Gardner did not file a responsive brief.

**ISSUES**

¶24. The following issues from Gardner's appeal are before this Court:

11

**I.**      **Whether the trial court erred by allowing Gardner's prior felony convictions into evidence.**

**II.**      **Whether the trial court committed plain error by granting a flight instruction.**

**III.**      **Whether the trial court erred by sentencing Gardner as a habitual offender.**

Because the Court of Appeals did not address the flight instruction and habitual offender issues, we expand our review to address those issues.

¶25. The State raised the following issues in its petition for writ of certiorari:

     *a.*      *Whether the Court of Appeals erred by holding that Gardner's claim was not procedurally barred.*

     *b.*      *Whether the Court of Appeals erred when it held that Mississippi Rule of Evidence 609(a)(1)(B) "tilts against" admission of a defendant's prior convictions.*

     *c.*      *Whether the Court of Appeals erred by finding that the trial court did not apply the standard established in Rule of Evidence 609(a)(1)(B).*

     *d.*      *Whether the Court of Appeals erred when it held that the trial court's* **Peterson** *analysis was inadequate.*

     *e.*      *Whether the Court of Appeals' de novo analysis under* **Peterson** *and its decision to reverse were erroneous.*

### ANALYSIS

**I.**      **The trial court did not err by admitting Gardner's prior felony convictions into evidence.**

     *a.*      *The Court of Appeals erred by holding that Gardner's claim was not procedurally barred.*

12

¶26. "Generally, a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred." *Swinney v. State*, 241 So. 3d 599, 605 (Miss. 2018) (internal quotation marks omitted) (quoting *Parker v. State*, 30 So. 3d 1222, 1227 (Miss. 2010)). "'An objection must be made with specificity, and failure to articulate the grounds for objection constitutes a waiver of the alleged error.' Furthermore, 'an objection cannot be enlarged in the reviewing court to embrace an omission not complained of at trial.'" *Body v. State*, 318 So. 3d 1104, 1115 n.6 (Miss. 2021) (citations omitted) (first quoting *Ross v. State*, 954 So. 2d 968, 987 (Miss. 2007); and then quoting *Smith v. State*, 986 So. 2d 290, 295 (Miss. 2008)).

¶27. In *Bush*, Bush argued that

> the trial court inappropriately allowed evidence of his prior convictions and failed to conduct an on-the-record balancing test before allowing the convictions into evidence. . . . [A]lthough Bush did object to the admission of the convictions at trial, he made no objection to the trial court's on-the-record analysis of its decision to allow the convictions into evidence. He is therefore procedurally barred from raising the issue of the trial court's alleged failure to conduct an on-the-record analysis.

*Bush*, 895 So. 2d at 847 (citations omitted) (citing *Dunn v. State*, 693 So. 2d 1333, 1339 (Miss. 1997)).

¶28. The facts here are nearly identical to those in *Bush*. Before the trial court conducted its *Peterson* analysis, Gardner objected to the court's admitting his prior convictions into evidence for being prejudicial and not "bring[ing] in the veracity," but he did not object to the court's *Peterson* or Rule 609 analysis. To allow Gardner's objection to encompass the

13

Rule 609 analysis improperly "enlarge[s]" his objection "to embrace an omission not complained of at trial." ***Body***, 318 So. 3d at 1115 n.6 (quoting ***Smith***, 986 So. 2d at 295). Further, Gardner now appeals *how* the judge conducted his analysis, but at trial, the analysis had not even occurred yet. Because Gardner did not object to the analysis, the issue is procedurally barred unless the trial court committed plain error.[11]

¶29. "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." ***Swinney***, 241 So. 3d at 605 (internal quotation marks omitted) (quoting ***Hall v. State***, 201 So. 3d 424, 428 (Miss. 2016)). "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial." ***Id.*** at 606 (internal quotation marks omitted) (quoting ***Conner v. State***, 138 So. 3d 143, 151 (Miss. 2014)). "Prejudice often is lacking when the weight of the evidence against a defendant is overwhelming." ***Id.*** (internal quotation marks omitted) (quoting ***Hall***, 201 So. 3d at 428)).

¶30. Here, as will be discussed, the trial court committed no error. Assuming arguendo the trial court erred, the overwhelming weight of the evidence against Gardner renders any perceived error harmless. The car Jungers pursued was rented by Gardner's mother. Gardner

---

[11]Because the Court of Appeals should have reviewed the issue for plain error, the Court of Appeals also erred by analyzing the ***Peterson*** factors *de novo*.

gave conflicting information about their relationship at the time. Prescriptions for Gardner were in the vehicle, and one of those bottles contained marijuana. Cocaine was found in the same vehicle. As soon as Smith was apprehended, he identified the accused as the driver. Smith's statements were consistent from the moment he was apprehended that night to when he testified at trial. Two officers testified that Gardner hid under his child's bed when they came to arrest him. The weight of the evidence against Gardner was overwhelming. Thus, the trial court did not commit plain error by admitting his prior convictions. *See Hall*, 201 So. 3d at 428-29 (finding "two eyewitnesses testif[ying] that Hall was the shooter" was overwhelming evidence that resulted in no manifest miscarriage of justice).

¶31.    The dissent's argument that this Court should not honor the finding in *Bush* since "*Bush* has not been cited since its issuance in 2005" is without citation to authority. Diss. Op. ¶ 74. No legal basis suggests that a case loses its precedential value if not cited for a decade, a score of years, or any certain number of years. The finding in *Bush* has precedential value unless this Court undermines its holding.

¶32.    The dissent also argues that *Bush* was wrongly decided because the *Bush* Court relied on a factually distinguishable case; simply relying on a factually distinguishable case does not invalidate *Bush*. Further, this argument also calls for an unjustified departure from the principle of *stare decisis*[12] since this Court has long held, and continues to hold, that "an

_____

[12]To overturn this Court's previous decisions, the law must be "'pernicious,' 'impractical,' or 'mischievous in . . . effect, and resulting in detriment to the public.'" *Bell v. State*, 160 So. 3d 188, 195 (Miss. 2015) (alteration in original) (quoting *Caves v.*

15

objection must be made with specificity" and "an objection cannot be enlarged in the reviewing court to embrace an omission not complained of at trial." ***Body***, 318 So. 3d at 1115 (quoting ***Ross***, 954 So. 2d at 987). As a result, ***Bush*** remains good law with precedential value.

¶33. Gardner's claim is procedurally barred, and the trial court did not commit plain error. Notwithstanding the procedural bar, we address the issues on the merits.

> b. *The Court of Appeals erred when it held that Mississippi Rule of Evidence 609(a)(1)(B) tilts against admission of a defendant's prior convictions.*

¶34. Without citing any authority, the Court of Appeals held:

> this case is governed by Rule 609(a)(1)(B)'s balancing test, which provides that evidence of a testifying defendant's prior convictions *must be excluded* unless its "probative value . . . outweighs its prejudicial effect." Whereas Rule 403 tilts the scales "substantially" in favor of admitting relevant evidence, Rule 609(a)(1) tilts the scales against evidence of a defendant's prior convictions by requiring the State to show that the evidence's probative value actually "outweighs its prejudicial effect."

***Gardner***, 412 So. 3d at 495 (alteration in original) (emphasis added). In other words, the Court of Appeals inverted the specific language of Rule 609(a)(1)(B) and erroneously found that it favors inadmissibility while Rule 403 favors admissibility. ***Id.*** Facts, not the language of the Rules, control admissibility under each rule. The rules also do not suggest such a preference for any party.

¶35. When the Mississippi Rules of Evidence were adopted, this Court was "of the opinion

---

***Yarbrough***, 991 So. 2d 142, 151 (Miss. 2008)).

that the *fair and efficient administration of justice* in the courts of this state will be promoted"

by adopting the rules. Miss. R. Evid. Order Adopting the Mississippi Rules of Evidence

(emphasis added). Further, the Rules "shall be construed so as to administer every proceeding

*fairly*, eliminate unjustifiable expense and delay, and promote the development of evidence

law, to the end of *ascertaining the truth and securing a just determination*." Miss. R. Evid.

102 (emphasis added).

¶36.    Under Rule 403, a "court *may* exclude relevant evidence if its probative value is

substantially outweighed by a danger of . . . unfair prejudice . . . ." Miss. R. Evid. 403

(emphasis added). "Rule 403 is an ultimate filter through which all otherwise admissible

evidence must pass." ***Ambrose v. State***, 254 So. 3d 77, 138 (Miss. 2018) (internal quotation

marks omitted) (quoting ***Batiste v. State***, 121 So. 3d 808, 863 (Miss. 2013)). Under Rule

609(a)(1)(A), a prior felony conviction, "must be admitted, subject to Rule 403, when the

witness is not a party . . . ." Miss. R. Evid. 609(a)(1)(A). Under Rule 609(a)(1)(B), a prior

felony conviction "*must* be admitted when the witness is a party, if the probative value of the

evidence outweighs its prejudicial effect to that party." Miss. R. Evid. 609(a)(1)(B)

(emphasis added).

¶37.    By the rules' plain language, Rule 609(a)(1)(B) is differentiated from Rule 403

because of the Rules' use of "may" and "must." Rule 403 uses "may," which gives the trial

judge the discretion to exclude evidence that is unfairly prejudicial. Miss. R. Evid. 403.

However, Rule 609(a)(1)(A) and (B) use "must," which removes discretion from the trial

judge's decision. Miss. R. Evid. 609(a)(1).

¶38.   This Court has never held that Rule 609(a)(1)(B) favors or disfavors admissibility, and such a holding violates the fairness required by our rules. Miss. R. Evid. 102. Further, Rule 609(a)(1)(B) reads prior convictions "*must be admitted* when the witness is a party, if the probative value of the evidence outweighs its prejudicial effect to that party . . . ." Miss. R. Evid. 609(a)(1)(B). The plain language of the rule does not presume the admissibility or inadmissibility of a party-witness's prior felony convictions. It simply requires that a such evidence be admitted if the probative value outweighs the prejudicial effect.

¶39.   This is especially true since reading the word *tilt* into the rules creates a logical contradiction within the rules themselves. Rule 609(a)(1)(A) reads prior felony convictions "must be admitted, subject to Rule 403, when the witness is not a party[.]" Miss. R. Evid. 609(a)(1)(A). The language is substantially the same as Rule 609(a)(1)(B), which logically would suggest Rule 609(a)(1)(A) also *tilts* against admission. However, according to the Court of Appeals, Rule 403 suggests a *tilt* in favor of admission. ***Gardner***, 412 So. 3d at 495. The innate logical contradiction refutes the idea that Rules 403 or 609 presume admission or exclusion. Rather, admission or exclusion are fact-intensive inquiries that vary with each case, and finding the proper resolution depends on the trial court's using the appropriate level of discretion, which is based on whether the court is applying Rules 403 or 609(a)(1)(B). *See supra* ¶ 37.

¶40.   Thus, the Court of Appeals erred when it determined the rules *tilt* for or against

18

admission.

> c. *The Court of Appeals erred by finding that the trial court did not apply the standard established in Rule of Evidence 609(a)(1)(B).*

¶41.    In ***Peterson***, this Court held that Rule "609 requires the trial court to make an on-the-record determination that the probative value of the prior conviction outweighs its prejudicial effect before admitting impeachment evidence of a party's prior conviction," and this Court provided factors to assist in making that determination. ***Bush***, 895 So. 2d at 847 (citing ***Peterson***, 518 So. 2d at 636). However, this Court later decided in ***Bush*** not to strictly require that a trial court analyze each factor on the record as long as "it was apparent that he had appropriately 'conduct[ed] a balancing test considering at least some of the factors.'" ***Id.*** at 848 (alteration in original) (quoting ***Young v. State***, 731 So. 2d 1145, 1152 (Miss. 1999)). The record reveals this occurred.

¶42.    The record clearly reveals that when the matter of Gardner's prior convictions first arose, the judge first said the convictions must be brought in under Rule 609(a)(1)(B), and then he followed that statement with "*And* I've got to do a balancing test under 403." *Supra* ¶ 14 (emphasis added). "And" reveals he knew he needed to analyze Gardner's prior convictions under both rules; neither party objected to this understanding. *Supra* ¶ 14. As the record shows, he did just that. When he conducted his analysis, he first said "in *looking* at the ***Peterson*** factors, I believe that, considering everything, it weighs in favor of admissibility." *Supra* ¶ 15 (emphasis added). He twice said he was "looking" at the ***Peterson***

19

factors when undertaking his 609(a)(1)(B) analysis, and the ***Peterson*** case makes no mention of Rule 403. As before, he then followed that statement with "*And* doing the 403 balancing test . . . ." *Supra* ¶ 15 (emphasis added). The trial judge clearly bifurcated his analysis, to which neither party objected. He later showed an accurate understanding of Rule 609(a)(1)(B), even reading the rule to defense counsel. *Supra* ¶ 16. Unquestionably, the record reveals the trial court analyzed the prior convictions against both Rule 609(a)(1)(B) and Rule 403. As a result, the trial court did not err by applying the wrong rule.

> d.    *The Court of Appeals erred when it held that the trial court's* **Peterson** *analysis was inadequate.*

¶43.    The Court of Appeals also held that the trial court's ***Peterson*** analysis was inadequate because the trial court did not verbalize each and every factor. ***Gardner***, 412 So. 3d at 497. Post-***Peterson*** and ***Bush***, the rule was not changed.

¶44.    The ***Peterson*** Court provided five factors that trial courts are to consider:

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness's subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue.

***Bush***, 895 So. 2d at 847-48 (citing ***Peterson***, 518 So. 2d at 637).

¶45.    While "***Peterson*** does give factors which a trial court ought to consider . . . , we do not apply it so rigidly that we reject honest efforts by trial courts to carefully weigh the

20

probative value of prior acts against their prejudicial effect for the purposes of impeachment." ***Bush***, 895 So. 2d at 848. In other words, "conducting a substantive balancing test in line with the spirit of ***Peterson***" sufficiently satisfies Rule 609(a)(1)(B). ***Bush***, 895 So. 2d at 848.

¶46. Here, the record clearly reveals that the trial court satisfied the requirements of ***Peterson***. In the trial judge's analysis, he said he was "looking" at the ***Peterson*** factors, not once but twice. He also said after that analysis that he was "looking" at Rule 609(a). In the record, the judge nearly quoted the rule verbatim when he read it to defense counsel. Further, before admitting the evidence, the trial judge specifically mentioned the similarity factor, which is found in ***Peterson*** but not included in Rule 609(a) itself. *Supra* ¶ 41; Miss. R. Evid. 609(a). In other words, the record clearly shows that the trial judge considered both Rule 609 and the factors provided in ***Peterson***.

¶47. When conducting a ***Peterson*** analysis, the best practice may be for a trial judge to discuss every factor on the record. However, the record here reveals that the seasoned judge "satisfied the requirements of Rule 609(a)(1)(B) by conducting a substantive balancing test" that went beyond the mere "spirit of ***Peterson***." ***Bush***, 895 So. 2d at 848. Rather, the judge actually followed ***Peterson*** by using the factors listed in that case. ***Bush***, 895 So. 2d at 848.

**II.    The trial court did not commit plain error by granting a flight instruction.**

¶48. Gardner admits that, again, he failed to object to instruction 4, the flight instruction, at trial. Thus, as Gardner concedes, this issue is also procedurally barred unless there is plain

21

error. There was no plain error in granting a flight instruction.

¶49. Gardner argues giving instruction 4 is plain error, for he now claims the instruction allows the jury to presume his guilt as to the felony-evasion charge, which he argues is a violation of his due process rights under the Fourteenth Amendment of the United States Constitution. This issue likewise is without merit.

¶50. Jury instruction 4 reads:

> "Flight" is a circumstance from which guilty knowledge and fear *may* be inferred. If you believe from the evidence in this case *beyond a reasonable doubt* that the Defendant, Jimmie Leshaun Gardner did flee or go into hiding, such flight or hiding *is to be considered in connection with all other evidence in this case*. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and *give it such weight as you think it is entitled to* in determining the guilt or innocence of the Defendant.

(Emphasis added.)

¶51. Further, the trial court instructed the jury in jury instruction 11 that to find that Gardner committed felony evasion, it must find that

2. Jimmie Leshaun Gardner, did willfully and unlawfully, while driving a motor vehicle,

3. Fail to stop in compliance with a visible and audible signal given by a law enforcement officer acting in the lawful performance of his duty and who had reasonable suspicion to believe that the driver had committed a crime,

4. And the failure to stop resulted in Jimmie Leshaun Gardner operating the motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property in a manner manifesting extreme indifference to the value of human life.

¶52. "The jury instructions are to be read as a whole, with no one instruction to be read alone or taken out of context." *Jenkins v. State*, 371 So. 3d 593, 596 (Miss. 2023) (internal quotation marks omitted) (quoting *Watkins v. State*, 101 So. 3d 628, 633 (Miss. 2012)). "If the jury instructions, read as a whole, fairly announce the law of the case and create no injustice, no reversible error will be found." *Id.* (internal quotation marks omitted) (quoting *Windless v. State*, 185 So. 3d 956, 960 (Miss. 2015)). "This Court . . . 'presumes that jurors follow the instructions of the court. To presume otherwise would be to render the jury system inoperable.'" *Neal v. State*, 15 So. 3d 388, 402 (Miss. 2009) (quoting *Moore v. State*, 787 So. 2d 1282, 1291 (Miss. 2001)).

¶53. Flight instructions are permitted because "the flight of the accused is competent evidence against him as having a tendency to establish his guilt." *Allen v. United States*, 164 U.S. 492, 499, 17 S. Ct. 154, 41 L. Ed. 528 (1896). However, a jury may not "infer that [flight] alone is sufficient to create a presumption of guilt." *Alberty v. United States*, 162 U.S. 499, 510-11, 16 S. Ct. 864, 40 L. Ed. 1051 (1896). Since *Alberty* and *Allen*, this Court has held that admitting a flight instruction "is permitted only when (1) the flight is unexplained, and (2) the circumstance of flight has considerable probative value of guilt or guilty knowledge." *Harrell v. State*, 134 So. 3d 266, 275 (Miss. 2014) (first citing *States v. State*, 88 So. 3d 749, 757 (Miss. 2012); and then citing *Austin v. State*, 784 So. 2d 186, 194

23

(Miss. 2001)).[13]

¶54.   For a century now, this Court has approved flight instructions, including some that are very similar to the flight instruction in this case. *See Harrell*, 134 So. 3d at 276; *see also Shumpert v. State*, 935 So. 2d 962, 970 (Miss. 2006); *see also Walker v. State*, 913 So. 2d 198, 234 (Miss. 2005); *Randolph v. State*, 852 So. 2d 547, 566 (Miss. 2002); *Wall v. State*, 718 So. 2d 1107, 1112 (Miss. 1998); *Holly v. State*, 671 So. 2d 32, 37 (Miss. 1996) (using almost the same jury instruction); *Evans v. State*, 579 So. 2d 1246, 1248-49 (Miss. 1991); *Brock v. State*, 530 So. 2d 146, 153 (Miss. 1988); *Pharr v. State*, 465 So. 2d 294, 304 (Miss. 1984); *Sims v. State*, 164 Miss. 16, 142 So. 468, 469 (1932); *Ransom v. State*, 149 Miss. 262, 115 So. 208, 209 (1928), *overruled by Flowers v. State*, 473 So. 2d 164 (Miss. 1985); *Tatum v. State*, 142 Miss. 110, 107 So. 418, 419 (1926).

¶55.   The only appellate case in Mississippi to specifically address the relationship between a flight instruction and felony evasion is *Williams v. State*, 126 So. 3d 85, 93 (Miss. Ct. App. 2013). In that case, the Court of Appeals dealt with the same argument regarding the same instruction. *Id.* at 92-93; *supra* ¶ 50. The court said the argument fails because flight and felony evasion are two different crimes with different elements, as shown by the felony-evasion instruction's never using the words "flee" or "hide." *Williams*, 126 So. 3d at 93; *see*

---

[13]Gardner said that he did not flee from Jungers because he was not in the black car. He explained that he did not turn himself in to police after seeing on television that he was wanted because he first wanted to speak with his attorney, who he said was on vacation. Finally, he offered that he hid under his child's bed because he thought the police were robbers.

*also* Miss. Code Ann. § 97-9-72 (Rev. 2014).

¶56. Further, the court held the instruction did not allow the jury to presume guilt because

> Instruction 5 clearly instructed that, before the jury could consider Williams's flight as evidence of his consciousness of guilt, it first had to find he did indeed hide or flee. And only if the jury found Williams hid or fled must it consider, based on "all the facts[,] whether such flight or hiding was from a conscious sense of guilt." Still, even then, the jury was told it could "give [its findings] such weight as [it thought]." So the flight instruction did not mandate the jury to convict Williams of evasion. It merely allowed the jury to weigh the evidence of Williams's flight after the car wreck as it saw fit.
>
> Instruction 5 in no way altered Instruction 6's requirement that to find Williams guilty, the jury had to find beyond a reasonable doubt that Williams failed to stop after being signaled to do so by law enforcement.

*Williams*, 126 So. 3d at 93 (alterations in original). Because the instruction did not alter the presumption of innocence, the Court of Appeals held the trial court did not err. ***Id.***

¶57. The Court of Appeals' analysis in ***Williams*** is spot on. The instruction did not allow the jury to infer that Gardner was guilty of felony evasion. Rather, if the jury found beyond a reasonable doubt that Gardner in fact fled and such flight was induced by a guilty conscience, the instruction allowed the jury to consider his flight only as additional evidence of a guilty conscience. Because this Court "presumes that jurors follow the instructions of the court," the trial court did not err. ***Neal***, 15 So. 3d at 402 (quoting ***Moore***, 787 So. 2d at 1291.

### III. The trial court did not err by sentencing Gardner as a habitual offender.

¶58. Finally, Gardner argues the trial court erred by sentencing him as a habitual offender

because he received a suspended sentence and unsupervised probation on his conviction for possessing codeine, which he argues cannot support his habitual offender status. The Court of Appeals also did not rule on this issue, but this issue is likewise without merit.

¶59.    A person may be sentenced as a habitual offender if he was convicted of two separate felonies, those felonies arose from two different incidents, and he was "sentenced to separate terms of one (1) year or more *in any state and/or federal penal institution*, whether in this state or elsewhere . . . ." Miss. Code Ann. § 99-19-81 (Rev. 2015) (emphasis added).

¶60.    This Court addressed Gardner's argument in *Jackson v. State*, 381 So. 2d 1040 (Miss. 1980). Jackson was sentenced to serve three years on his second felony, but his sentence was suspended and he only got probation. *Id.* at 1042. On appeal, he argued the statute requires that defendants actually serve time on each conviction for the felonies to count toward habitual-offender status. *Id.* This Court rejected the argument "because we think the statutory intention is satisfied where, as here, the accused has been twice previously adjudged guilty of distinct felonies upon which sentences of one year or more have been pronounced, irrespective of subsequent probation or suspension of the sentences." *Id.*; *see also Weaver v. State*, 497 So. 2d 1089, 1096 (Miss. 1986) (quoting *Jackson*, 381 So. 2d at 1042).

¶61.    The trial court that heard Gardner's possession-of-codeine case ordered that Gardner be "sentenced to serve a term of 8 years." Because this is sufficient to support his conviction as a habitual-offender, the trial court did not err.

**CONCLUSION**

¶62. Gardner's prior-convictions claim was procedurally barred by his failure to object at trial, and he failed to show that the trial court committed plain error. Notwithstanding the procedural bar, the trial court did not err. As a result, we affirm in part and reverse in part the judgment of the Court of Appeals, and we reinstate and affirm Gardner's convictions and sentences. Further, the trial court did not err when it issued the flight instruction and sentenced Gardner as a habitual offender.

¶63. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART, AND THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS REINSTATED AND AFFIRMED.**

**ISHEE, GRIFFIS AND BRANNING, JJ., CONCUR. COLEMAN, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, J.; COLEMAN, P.J., JOINS IN PART.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶64. I would find that the Court of Appeals correctly held that the trial court committed reversible error by failing to apply the correct legal standard in its decision to admit Gardner's prior convictions and by failing to conduct an adequate analysis pursuant to *Peterson v. State*, 518 So. 2d 632 (Miss. 1987). I also would find that the giving of a flight instruction in a felony-evasion case amounted to plain error. Therefore, I respectfully dissent.

**I.      Prior Convictions**

¶65. "The circuit court's decision to admit . . . prior conviction[s] for impeachment is reviewed under an abuse-of-discretion standard." *Strickland v. State*, 980 So. 2d 908, 919

27

(Miss. 2008) (citing *Henderson v. State*, 641 So. 2d 1184, 1186 (Miss. 1994)). But, "[i]f the trial court incorrectly perceived the applicable legal standard, this Court operates with a substantially broader standard of review." *Baine v. State*, 606 So. 2d 1076, 1078 (Miss. 1992) (citing *Holland v. State*, 587 So. 2d 848, 855 (Miss. 1991)). "This Court 'will reverse for erroneous interpretation or applications of the law.'" *Trowbridge Partners, L.P. v. Miss. Transp. Comm'n*, 954 So. 2d 935, 938 (Miss. 2007) (quoting *Bank of Miss. v. Hollingsworth*, 609 So. 2d 422, 424 (Miss. 1992)).

¶66. During Gardner's trial in July 2019, the State rested its case, and Gardner announced his decision to testify. The State then indicated that it intended to question Gardner about his prior convictions. Under Mississippi Rule of Evidence 609(a),

> The following rules apply to attacking a witness's character for truthfulness by evidence of criminal conviction:
>
> **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
> **(A)** must be admitted, subject to Rule 403, when the witness is not a party; and
>
> **(B)** must be admitted when the witness is a party, if the probative value of the evidence outweighs its prejudicial effect to that party;

MRE 609(a)(1).

¶67. Gardner's two prior convictions included: 1) burglary of a dwelling in 2010, and 2) possession of codeine in 2014. The State argued that the two prior convictions were

28

admissible to attack Gardner's credibility. Defense counsel objected and initially argued that

burglary conviction was beyond the ten-year time limit. *See* MRE 609(b).[14] Both convictions

were within ten years, however, and the trial court referred to Mississippi Rule of Evidence

609(a)(1)(B). The trial court stated that it would have to conduct a balancing test under

Mississippi Rule of Evidence 403, which provides that "[t]he court may exclude relevant

evidence if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

time, or needlessly presenting cumulative evidence." MRE 403.

¶68.    Defense counsel requested a limiting instruction if the trial court allowed the State to

cross-examine Gardner regarding his prior convictions. Defense counsel then argued that

allowing the prior convictions would be prejudicial and that the convictions did not affect

Gardner's veracity. Defense counsel stated that "what's going to happen is we're going to

tell the jury that he's been convicted of two crimes, and then that sort of seals the deal at that

point."

¶69.    The trial court admitted the prior convictions and reasoned:

> At least one of these crimes is not similar at all, that being the burglary of a
> dwelling. The defendant has had two prior witnesses—two alibi witnesses to
> testify on his behalf. In looking at all those **Peterson** factors, I believe that,
> considering everything, it weighs in favor of admissibility. And doing the 403
> balancing test, I do find that the prejudicial effect of the admission of those
> convictions is not—excuse me, the probative value of the admission is not

---

[14]Rule 609(b) applies "[i]f more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. . . ." MRE 609(b).

substantially outweighed by the prejudicial effect, so they will be admitted subject to a limiting instruction.

¶70. The Court of Appeals reversed Gardner's conviction and remanded the case for a new trial, finding that the trial court had failed to address all of the factors from *Peterson*, 518 So. 2d 632, and additionally had applied the incorrect balancing test. *Gardner v. State*, 412 So. 3d 486, 497 (Miss. Ct. App. 2024). Further, the Court of Appeals found that the trial court abused its discretion by admitting evidence of Gardner's prior convictions. *Id.*

## A. Waiver

¶71. Because Gardner's counsel objected to the admission of his prior convictions and argued that the admission of the convictions would be prejudicial, I disagree with the majority's contention that Gardner's counsel failed to make a contemporaneous objection at trial.

¶72. "Rule 609(a)(1) requires the trial judge to make an on-the-record determination that the probative value of the prior conviction outweighs its prejudicial effect before admitting any evidence of a prior conviction." *Peterson*, 518 So. 2d at 636. The relevant factors that the trial judge should consider are:

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue.

*Id.* at 636. The ***Peterson*** Court found that an attorney sufficiently had objected to a question regarding the defendant's prior conviction by stating "we object to that question under the new Rules of Civil Procedure." *Id.* at 634. That objection encompassed Peterson's contention that "the trial judge erred in admitting the evidence without making an on-the-record determination that its probative value outweighed its prejudicial effect." *Id.* at 634-35.

¶73.    I would find that the Court of Appeals correctly held that counsel had sufficiently objected to the admission of Gardner's prior convictions. In a footnote, the Court of Appeals rejected the State's argument that Gardner had waived this issue because he had not sufficiently challenged the trial court's ***Peterson*** analysis during trial. ***Gardner***, 412 So. 3d at 493 n.8. It found that "Gardner's trial counsel objected to the admission of the convictions and explained why they were more prejudicial than probative, and the trial court then ruled that the convictions were admissible under ***Peterson***. Counsel's objection was sufficient to preserve the issue for appeal." ***Gardner***, 412 So. 3d at 493 n.8.

¶74.    The majority cites ***Bush v. State***, 895 So. 2d 836, 847 (Miss. 2005), *abrogated on other grounds by* ***Little v. State***, 233 So. 3d 288 (Miss. 2017), in which this Court "note[d] that although Bush did object to the admission of the convictions at trial, he made no objection to the trial court's on-the-record analysis of its decision to allow the convictions into evidence. He is therefore procedurally barred from raising the issue of the trial court's alleged failure to conduct an on-the-record analysis." That holding in ***Bush*** has not been cited since its issuance in 2005, however. I would find that the ***Bush*** Court was in error as its

31

decision was "impractical[,]" "resulting in detriment to the public." ***Bell v. State***, 160 So. 3d 188, 195 (Miss. 2015) (internal quotation marks omitted) (quoting ***Caves v. Yarbrough***, 991 So. 2d 142, 151 (Miss. 2008)). ***Bush*** relied on ***Dunn v. State***, 693 So. 2d 1333, 1339 (Miss. 1997), in which this Court determined that a defendant who claimed that the trial court erred by appointing him as his own counsel was procedurally barred from raising the issue on appeal because he had "never raised an objection or voiced his opposition to what was taking place."

¶75. Conversely, Gardner's attorney clearly objected to the admission of the evidence, and after the specific rule was stated, argued that the convictions would be prejudicial and would essentially seal the deal in the jury's minds.[15] This objection was sufficient to preserve the

---

[15]The majority illogically attempts to frame defense counsel's objection as stating that "he would tell the jury that Gardner had been convicted of two crimes and that he then would move on to other questions." Maj. Op. ¶ 15 n.7. The transcript fails to support the majority's representation, as shown below:

> The Court: I figured that. Do y'all want any further argument why I should or shouldn't allow those convictions to be admitted into evidence?
>
> Prosecution: No, Your Honor.
>
> Defense: We would just think that it's prejudicial. I don't think either one of those are crimes that bring in the veracity.
>
> I think if—what's going to happen is we're going to tell the jury that he's been convicted of two crimes, and then that sort of seals the deal at that point.

Clearly counsel was arguing, in response to the trial court's inquiry, that the convictions should not be admitted. Counsel stated that admitting the convictions would be prejudicial and "sort of seals the deal at that point[,]" i.e., telling the jury that Gardner had twice been

issue for appeal.

¶76.    Mississippi Rule of Evidence 103 provides:

**(a)    Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:

**(1)** if the ruling admits evidence, a party, on the record:

**(A)** timely objects or moves to strike; and

**(B)** states the specific ground, unless it was apparent from the context;

MRE 103(a)(1)(A)-(B).

¶77.    Rule 103 further states that

Once the court rules definitively on the record either before or at trial:

(1) a party need not renew an objection or offer of proof to preserve a claim of error for appeal;

(2) an objecting party does not waive or forfeit a claim of error by offering evidence of a conviction the court held admissible; and

(3) a party preserves a claim of error in a ruling to admit or exclude evidence only if each condition of the ruling is fulfilled at trial.

MRE 103(c).

¶78.    Further, "[i]t is the duty of a trial counsel, if he deems opposing counsel overstepping the wide range of authorized argument, to promptly make objections and insist upon a ruling by the trial court." ***Keller v. State***, 138 So. 3d 817, 864 (Miss. 2014) (quoting ***Flowers v.***

---

convicted would seal Gardner's guilt in the jury's minds. Defense counsel said nothing about moving on to other questions.

*State*, 842 So. 2d 531, 550 (Miss. 2003)). Defense counsel did exactly that. Gardner's counsel objected to the State's intention to use Gardner's prior convictions in a timely manner by arguing that the conviction was prejudicial. His objection was apparent from the context, and defense counsel was not required to make a follow-up objection after the trial court's decision.

¶79. This is not a case in which counsel sat "idly by making no protest as objectionable evidence is admitted . . . ." *Davis v. State*, 684 So. 2d 643, 658 (Miss. 1996) (internal quotation mark omitted) (quoting *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987)). Defense counsel objected to the State's intention to admit evidence of Gardner's prior convictions and argued that the convictions would be prejudicial and that evidence of the convictions would secure Gardner's guilt in the jury's minds. That objection encompassed the trial court's *Peterson* analysis and subsequent ruling and sufficiently preserved the issues for appeal. Thus, I agree with the Court of Appeals' conclusion that Gardner did not waive for appellate review the claim that his prior convictions were improperly admitted.

### B.    Improper Legal Standard

¶80. Moreover, because the trial court applied the incorrect legal standard in its decision to admit Gardner's prior convictions, I disagree with the majority's conclusion that the trial court committed no error. "Mississippi follows the general rule that proof of a crime distinct from that alleged in the indictment should not be admitted in evidence against the accused." *Eubanks v. State*, 419 So. 2d 1330, 1332 (Miss. 1982) (citing *Loeffler v. State*, 396 So. 2d

34

18 (Miss. 1981)).

> The reason and justice of the rule is apparent, and its observance is necessary to prevent injustice and oppression in criminal prosecutions. Such evidence tends to divert the minds of the jury from the true issue, and to prejudice and mislead them, and, while the accused may be able to meet a specific charge, he cannot be prepared to defend against all other charges that may be brought against him. "To permit such evidence," says Bishop, "would be to put a man's whole life in issue on a charge of a single wrongful act, and crush him by irrelevant matter, which he could not be prepared to meet."

*Id.* (citations omitted).

¶81.   Again, when the witness is a party, evidence of a crime under Rule 609(a)(1)(B) "must be admitted . . . *if the probative value of the evidence outweighs* its prejudicial effect to that party . . . ." MRE 609(a)(1)(B) (emphasis added).  The trial court, however, failed to follow the standard mandated by Rule 609(a)(1)(B) and solely conducted a balancing test under Rule 403. Rule 403 provides that "[t]he court may exclude relevant evidence *if its probative value is substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403 (emphasis added).

¶82.   The trial court reasoned that "[a]nd doing the 403 balancing test, I do find that the prejudicial effect of the admission of those convictions is not—excuse me, the probative value of the admission is not *substantially* outweighed by the prejudicial effect." (Emphasis added.) The trial court made no finding under Rule 609(a)(1)(B) as to whether the probative value of admitting Gardner's convictions outweighed its prejudicial effect to Gardner. The transcript reads:

35

The Court: Well, why don't y'all look at the rules, direct me to a rule, rather than–

[Defense counsel], let me ask you, are you intending on bringing out those convictions in your direct examination?

Defense: No, Your Honor.

Prosecution: I believe that's—Your Honor, I believe it—I believe it falls under 609(a)–

The Court: 609(a)(1)(B).

Prosecution: Yes, sir.

The Court: And I've got to do a balancing test under 403.

Prosecution: Yes, sir.

The Court: And I don't believe that either one of these convictions are more than ten years old, so I don't have to make—

The majority reads much into the word *and*, speciously arguing that "'And' reveals he knew he needed to analyze Gardner's prior convictions under both rules; neither party objected to this understanding." Maj. Op. ¶ 42. Yet the transcript shows that the trial court's use of the word *and* was nothing more than a transition, as evidenced by the use of the similar use of *and* in its following statement. Rather, the trial court stated that the conviction fell under Rule 609(a)(1)(B) and then proceeded to use the incorrect balancing test under Rule 403. Similarly, the majority again distorts the record by stating that because the trial court said it was "looking at the **Peterson** factors," it had conducted a "bifurcated" analysis of Rule 403 and Rule 609(a)(1)(B). Maj. Op. ¶ 42. That contention is not supported by the record.

Instead, the record shows that the trial court conducted no analysis of the balancing test required by Rule 609(a)(1)(B) and incorrectly and solely conducted an analysis under Rule 403.

¶83. While Rule 609(a)(1)(A) specifically cites Rule 403 as the standard for admitting evidence if a witness is not a party, it provides a higher standard for admitting evidence of a defendant's prior convictions because the potential for unfair prejudice is high. Because Rule 609(a)(1)(B) demands a more stringent standard, I would find that the trial court's application of the incorrect standard was reversible error.

¶84. The record reflects that the trial court merely recited Rule 609(a)(1)(B) and then incorrectly applied solely the Rule 403 standard, as evidenced by the following:

> Prosecution: I believe that's—Your Honor, I believe it—I believe it falls under 609(a)---
>
> The Court: 609(a)(1)(B).
>
> Prosecution: Yes, sir.
>
> The Court: And I've got to do a balancing test under 403.

The trial court then proceeded to state in his analysis only that in "doing the 403 balancing test, I do find that . . . the *probative value of the admission is not substantially outweighed by the prejudicial effect* . . . ." (Emphasis added.) After the trial court's ruling, when defense counsel was discussing the limiting instruction and argued that the convictions were not being used for impeachment, the trial court read part of Rule 609(1)(B) but did not revise his ruling to apply the correct balancing test. Thus, the trial court never applied the correct legal

standard to its ruling.

¶85.   Moreover, the Court of Appeals correctly concluded that

> Whereas Rule 403 tilts the scales "substantially" in favor of admitting relevant evidence, Rule 609(a)(1) tilts the scales *against* evidence of a defendant's prior convictions by requiring the State to show that the evidence's probative value actually "outweighs its prejudicial effect." Given the material difference between the two standards, the trial court's application of the wrong one is significant.

*Gardner*, 412 So. 3d at 495. The majority zeroes in on the use of the word *tilts* and argues

that the rules do not favor or disfavor admissibility. Yet Mississippi Rule of Evidence 401

provides that:

> Evidence is relevant if:
>
> **(a)**    it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> **(b)**    the fact is of consequence in determining the case.

MRE 401. The advisory committee note to Rule 401 states that "[i]f the evidence has any

probative value at all, the rule favors its admission."[16] MRE advisory comm. n. Further, Rule

402 states that

> Relevant evidence is admissible unless any of the following provides otherwise:
>
> •    the United States Constitution;

---

[16]*See also* **Young v. Ill. Cent. Gulf R.R. Co.**, 618 F.2d 332, 337 (5th Cir. 1980) ("[i]t must be remembered that '(t)he federal rules and practice favor the admission of evidence rather than its exclusion if it has any probative value at all." (quoting **United States v. Carranco**, 551 F.2d 1197 (10th Cir. 1977)).

- the Mississippi Constitution; or

- these rules.

Irrelevant evidence is not admissible.

MRE 402. Therefore, because Rules 401 and 402 favor the admission of evidence, Rule 403's language that "[t]he court may exclude relevant evidence if *its probative value is substantially outweighed by a danger . . .*" also may logically be read to favor the admissibility of evidence. MRE 403 (emphasis added). Consequently, due to the potential for unfair prejudice to the defendant, evidence falling under Rule 609(a)(1)(B) must only be admitted "if the probative value of the evidence outweighs its prejudicial effect to that party . . . ." MRE 609(a)(1)(B).

¶86.    The advisory committee note to Rule 609 provides that

Rule 609(a)(1) was amended in 2002 to incorporate the rationale of decisions by the Mississippi Supreme Court which recognized the difference in the highly prejudicial effect of showing the convictions when the witness is the accused and the little prejudicial effect from such impeachment of other witnesses.

. . . .

The amendments here refer to parties instead of the accused to clearly apply to civil cases, as did the original rule. Under this amended rule, convictions offered under 609(a)(1) to impeach a party must be analyzed under the guidelines set forth in **Peterson** . . . to determine if the probative value is great enough to overcome the presumed prejudicial effect to that party, and findings should be made on the record by the judge. Convictions offered to impeach any other witness are admissible unless the court is persuaded by the opponent that the probative value is substantially outweighed by negative factors included in Rule 403. A record of the findings on the issue is not required in that case.

MRE 609 advisory comm. n. Consequently, the Court of Appeals' analysis that Rule 403 *tilts* or favors admissibility is not incorrect. And due to the potential prejudice against the defendant, its statement that Rule 609(a)(1)(B) *tilts* the scales against, or disfavors, evidence of a defendant's prior convictions is accurate. *See **United States v. Preston***, 608 F.2d 626, 640 (5th Cir. 1979) ("We cannot mask our concern about the importance of making an on-the-record determination under Rule 609(a)(1). Failure to make such a determination robs a defendant of the Rule's protection. There is no escaping from this fact."); ***Johnson v. State***, 525 So. 2d 809, 811 (Miss. 1988) ("As such, the criminal defendant is subject to being impeached under Rule 609 with evidence of prior convictions. In this situation the protection of Rule 609, that the evidence must be determined by the trial judge to be more probative of the defendant's credibility than prejudicial, becomes crucial."). Rule 609(a)(1)(B) works to a protect a defendant from unfair prejudice by preventing a jury from improperly using a defendant's prior convictions as propensity evidence rather than solely for credibility assessment; thus, disfavoring the admission of prior convictions.

¶87. The trial court committed reversible error by failing to apply the correct legal standard in its analysis of whether to admit Gardner's prior convictions. Accordingly, I dissent.

### C. *Peterson* Analysis

¶88. In addition to the trial court's application of the incorrect balancing test, I agree with the Court of Appeals that the trial court abused its discretion by admitting evidence of Gardner's prior convictions. As this Court has mandated, a trial judge should consider the

following factors "when weighing the probative value of the convictions against the prejudicial effect of their admission":

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue.

*Peterson*, 518 So. 2d at 636.

¶89.    The trial court's analysis of the *Peterson* factors was as follows:

> In considering the *Peterson* factors, these—at least one of these crimes is not similar at all, that being the burglary of a dwelling. The defendant has had two prior witnesses—two alibi witnesses to testify on his behalf. In looking at all those *Peterson* factors, I believe that considering everything, it weighs in favor of admissibility.

As previously stated, however, the trial court incorrectly used the Rule 403 balancing test in its analysis. Applying the appropriate balancing test, I agree with the Court of Appeals' *Peterson* analysis, which is as follows:

### 1.    The Impeachment Value of the Prior Convictions

> Gardner's prior convictions were for burglary and possession of codeine. This Court has stated that "we see little, if any, impeachment value in . . . prior burglary convictions." *Triplett v. State*, 881 So. 2d 303, 307 (¶ 15) (Miss. Ct. App. 2004); *accord Malone v. State*, 829 So. 2d 1253, 1260 (¶ 20) (Miss. Ct. App. 2002) (holding that "the impeachment value" of a prior burglary conviction "would be slight"). And in *Peterson*, the Supreme Court held that a prior felony conviction for possession of a controlled substance "ha[d] little, if any, impeachment value." *Peterson*, 518 So. 2d at 637.

41

Accordingly, this factor weighs in favor of Gardner and against admission of the prior convictions.

### 2. The Point in Time of the Conviction and the Witness's Subsequent History

Gardner was convicted of burglary in 2010 and was convicted of possessing codeine in 2014. The incident at issue in this case occurred in 2016, and he was brought to trial in 2018. Gardner pled guilty to possessing codeine less than two years before the incident at this case, which weighs in favor of the admissibility of that conviction. *See id.* (holding that this factor weighed in favor of admissibility because the defendant's prior conviction occurred less than a year before the crime for which he was being tried). However, he pled guilty to burglary more than six years before the incident in this case and more than eight years prior to his trial, "lessening the[ ] probative value" of that conviction. *Townsend v. State*, 605 So. 2d 767, 770 (Miss. 1992) (seven-year-old burglary conviction); *accord Triplett*, 881 So. 2d at 307 (¶ 15) (noting that the defendant's prior conviction for receiving stolen property occurred eight years prior to trial and stating that "we see little probative value in the admission of an offense this old").

### 3. The Similarity Between the Past Crime and the Charged Crime

When a prior crime is similar to the crime for which the defendant is being tried, "the prejudicial effect of the conviction is very high." *Peterson*, 518 So. 2d at 637; see also *Settles v. State*, 584 So. 2d 1260, 1264 (Miss. 1991) ("The dangerous convictions are for crimes which are substantially similar to the crime charged . . . ."). Gardner's previous burglary conviction is not similar to either of his present charges, which weighs in favor of the admissibility of that conviction. However, Gardner's prior conviction for possessing codeine is similar to his present charge for possessing cocaine. Both codeine and cocaine are Schedule II drugs. *See* Miss. Code Ann. § 41-29-115(b) (Rev. 2023). Moreover, Officer Jungers testified at trial that he found "some suspected codeine" in the subject vehicle, further linking Gardner's prior conviction to the present charge. "In such a situation the jury is very likely to infer present guilt from past conviction for a similar offense." *Peterson*, 518 So. 2d at 637. Therefore, "[t]he 'likeness' of the conviction and the present charge weighs very heavily against admissibility." *Id.* (emphasis added).

42

### 4. The Importance of the Defendant's Testimony

In ***Peterson***, a law enforcement officer testified that the defendant, Peterson, sold her marijuana, but Peterson testified that he could not have been involved in the drug sale because he was at home with his mother at the time of the alleged sale. ***Id.*** at 634. Peterson's mother testified and corroborated his testimony. ***Id.*** The Supreme Court stated,

> Peterson and his mother were the only defense witnesses. Under his theory of the case (alibi), Peterson was one of the only witnesses who could establish his defense. Rule 609(a)(1) aids in the search for truth by insuring that important testimony from the defendant will not be excluded because he fears the prejudicial effect his previous conviction might have on the jury. The importance of Peterson's testimony weighs against the admissibility of the conviction.

***Id.*** at 637 (emphasis added).

Likewise, Gardner testified that he could not have committed the subject crimes because he was at home at the time, and his girlfriend and sister corroborated his testimony. Gardner "was one of the only witnesses who could establish his defense." ***Id.*** Therefore, "[t]he importance of [his] testimony weighs against the admissibility of the conviction[s]." ***Id.***; *accord **Jordan v. State***, 592 So. 2d 522, 523 (Miss. 1991).

### 5. The Centrality of the Credibility Issue

In ***Peterson***, the Supreme Court reasoned that Peterson's credibility was "important" because his alibi defense depended on it. ***Peterson***, 518 So. 2d at 637. The Court held that "[t]he importance of his credibility . . . weigh[ed] in favor of the admissibility of his prior conviction, but only to the extent, if any, that his prior conviction reflects adversely on his credibility." ***Id.*** (emphasis added). In another case, the Court indicated that when the defendant's "prior convictions have little or no bearing on veracity or credibility," this factor carries little weight. ***Jordan***, 592 So. 2d at 524.

As we explained under the first ***Peterson*** factor, Gardner's prior convictions for burglary and drug possession have little, if any, impeachment value. Therefore, although Gardner's credibility was an important issue at trial,

this factor only weighs slightly, if at all, in favor of the admissibility of those prior convictions.

* * * * *

In summary, the slight impeachment value of Gardner's prior burglary conviction was outweighed by the importance of Gardner's testimony to his alibi defense. In addition, the slight impeachment value of Gardner's prior conviction for drug possession was outweighed not only by the importance of his testimony but also by the prior conviction's "likeness" to his present charge for drug possession. Considering all five Peterson factors together, we cannot say that the slight probative value of Gardner's prior convictions "outweighs [their] prejudicial effect." MRE 609(a)(1)(B). Therefore, the convictions should not have been admitted for purposes of impeachment. Indeed, our analysis of the Peterson factors in this case is substantially similar to the Supreme Court's analysis in *Peterson*, where the Court held that the erroneous admission of the defendant's one prior drug conviction required reversal of the conviction and a new trial. *See Peterson*, 518 So. 2d at 637-38.

*Gardner*, 412 So. 3d at 495-97 (alterations in original).

¶90. The admission of Gardner's prior convictions would be more prejudicial than probative. Accordingly, I agree with the Court of Appeals' conclusion that the trial court abused its discretion by admitting Gardner's prior convictions.

## II. Flight Instruction

¶91. Lastly, because Gardner was on trial for felony evasion and because the given flight instruction allowed the jury to infer guilt if they found that Gardner did flee, especially without limiting the instruction to flight after the police chase, I would find that the trial court plainly erred by granting the flight instruction.

44

¶92. Gardner admits that defense counsel did not object to the flight instruction at trial.[17]

"Generally, a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred." ***Swinney v. State***, 241 So. 3d 599, 605 (Miss. 2018) (internal quotation marks omitted) (quoting ***Parker v. State***, 30 So. 3d 1222, 1227 (Miss. 2010)).

> "The plain error doctrine is employed only in situations when a defendant's substantive or fundamental rights are affected." "Plain-error review is properly utilized for correcting obvious instances of injustice or misapplied law." "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings."
>
> "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial."

***Id.*** at 605-06 (citations omitted).

¶93. Gardner was convicted of felony evasion under Mississippi Code Section 97-9-72, which provides that:

> (1) The driver of a motor vehicle who is given a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime, and who willfully fails to obey such direction shall be guilty of a misdemeanor . . . .
>
> (2) Any person who is guilty of violating subsection (1) of this section

---

[17]Defense counsel initially objected to the flight instruction but shortly afterward stated that he would not make any objection to it.

by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony . . . .

Miss. Code Ann. § 97-9-72(1)-(2) (Rev. 2014).

¶94. Jury instruction 4, a flight instruction, stated:

"Flight" is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, Jimmie Leshaun Gardner did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the Defendant.

¶95. "[A]n instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge." *Fuselier v. State*, 468 So. 2d 45, 56-57 (Miss. 1985) (citing *Pannell v. State*, 455 So. 2d 785 (Miss. 1984)). "[F]light instructions tell jurors that they may infer 'guilty knowledge' from flight—in essence, instructing jurors that they may infer that defendants are guilty of the crime of which they are accused, merely from the evidence of his or her flight." *Jones v. State*, 203 So. 3d 600, 612 (Miss. 2016) (internal quotation marks omitted). The Court has cautioned trial courts "to only allow such instructions in the rarest of cases." *Walker v. State*, 913 So. 2d 198, 234 (Miss. 2005)).

¶96. I would find that the giving of a flight instruction in a felony-evasion case was plain error. A defendant previously has raised the issue of whether a similarly worded flight

46

instruction allowed the jury to infer guilt in a felony-evasion case. ***Williams v. State***, 126 So. 3d 85, 93 (Miss. Ct. App. 2013). The Court of Appeals discussed that the defendant had not been charged with the crime of "flight" and that the words "flight" or "hiding" were not included in the elements of felony evasion. ***Id.*** It concluded that the flight instruction had not altered the flight instructions "requirement that to find Williams guilty, the jury had to find beyond a reasonable doubt that Williams failed to stop after being signaled to do so by law enforcement." ***Id.***

¶97. Flight and evasion are synonymous, however. Moreover, the prosecution's case relied on flight as the method of Gardner's evasion. This is evidenced by the prosecution's closing argument:

> He is a two-time convicted felon within six years at that time. One is a prior drug possession within two years. Do you think—what he is is a frequent flier. Mr. Camp wants to talk about jury instruction. There's a flight instruction in there that says when somebody runs they have a conscience of guilt. He runs, he flies frequently.
>
> He sees the road block. He turns around, flight number one, ditches the rental car, which—when people that are in the drug business, they don't deal in their own cars. They don't get their own cars seized, and rental cars are great for that. It happens all the time. And you don't ditch your own car. But the car gets ditched, and he runs.
>
> And if you hear Julian—and believe me. I'm not a champion of Julian Smith, ever. He probably did want to get out of the car. And it may not have been to get out because he didn't know anything. It may have been to get out because he didn't want to die, or he just wanted to separate himself. I don't know why. But flight number two, he gets out of the car, and he runs. And he gets away. Then he sees on the news where they're looking for him. He knows they're looking for him. He's not guilty, he's innocent. He's not going to call somebody and turn himself in or whatever? He knows they're looking for him,

47

and he's still avoiding them.

Then you've got these federal marshals that have been looking for him for days. Okay. And they find him somewhere where he's not living. If he was where he was living, they would have found him long before then. But they go there at 5:00 in the morning, and they find him.

And where is he? First of all, he doesn't come out. He doesn't respond. He knows they're there. The girlfriend knows they're there. He goes and hides up underneath the baby's bed. And they see his foot sticking out.

So guilty conscience, guilty conscience, guilty conscience. He's a frequent flier.

Therefore, the prosecution heavily emphasized as evidence of a guilty conscience flight both during the high-speed chase and after.

¶98.    The United States Supreme Court has previously stated that

While there is no objection to that part of the charge which permits the jury to take into consideration the defendant's flight from the country as evidence bearing upon the question of his guilt, it is not universally true that a man who is conscious that he has done a wrong 'will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right, and proper,' since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.' Innocent men sometimes hesitate to confront a jury; not necessarily they fear that the jury will not protect them, but because they do not wish their names to appear in connection with criminal acts, are humiliated at being obliged to incur the popular odium of an arrest and trial, or because they do not wish to be put to the annoyance or expense of defendant themself. The criticism to be made upon this charge is that it lays too much stress upon the fact of flight, and allows the jury to infer that this fact alone is sufficient to create a presumption of guilt.

*Alberty v. United States*, 162 U.S. 499, 510-11, 16 S. Ct. 864, 40 L. Ed. 1051 (1896).

¶99. The admission of a flight instruction in a felony-evasion case seriously affected the fairness of Gardner's trial. Gardner's defense at trial was that he was not present at and did not participate in the high-speed police chase. Yet the prosecution repeatedly informed the jury that Gardner had a guilty conscience evidenced through his evading police by not stopping for law-enforcement signals, by fleeing from the police after the car had stopped, and by not turning himself in afterward. The jury was required to weigh the evidence and determine if Gardner had fled from the police in a high-speed chase. The admission of a flight instruction that allowed the jury to presume a guilty conscience from fleeing or hiding at any point, especially in addition to the prosecution's comments, inserted confusion into the elements required for felony evasion and skewed Gardner's presumption of innocence. Therefore, I would find that the trial court plainly erred by its admission of the flight instruction. Accordingly, I dissent.

**SULLIVAN, J., JOINS THIS OPINION. COLEMAN, P.J., JOINS THIS OPINION IN PART.**